1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**E-FILED on    02/18/09**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

MARY SANBROOK on behalf of herself and
others similarly situated,

            Plaintiff,

    v.

OFFICE DEPOT, INC.,

            Defendant.

No. C-07-05938 RMW

ORDER DENYING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

**[Re Docket No. 58, 92]**

        Office Depot, Inc. ("Office Depot") moves for summary judgment as to Plaintiff Mary

Sanbrook's ("Sanbrook") individual claim.  For the reasons set forth below, the court denies Office

Depot's motion.

                                    **I. BACKGROUND**

        On July 24, 2006, Sanbrook bought a computer, printer and other products from an Office

Depot store in Mountain View, California.  Compl. ¶ 5, Ex. 1.  On the same date, after seeing Office

Depot's advertisements for the Performance Protection Plan ("the Plan"), Sanbrook also purchased a

two-year repair plan for $119.99.  *Id.* ¶¶ 6, 21.  The Plan is offered for sale by Office Depot

throughout the country to consumers who purchase items such as computers and peripherals.  *Id.* ¶ 8.

Office Depot advertises the Plan as providing "100% of parts and labor coverage from day one,"

United States District Court
For the Northern District of California

"on-site service for your computer system," and "[c]ertified technical assistance [] available toll free, 24 hours a day, 7 days a week."  Compl. ¶¶ 9-11, Ex. 2.  A brochure containing the foregoing representations was given to Sanbrook and is allegedly given to every purchaser at the time of sale.[1] *Id.* ¶ 12.  The brochure also provides: "Should your product fail, and we diagnose a hardware problem, we provide on-site service . . . ." Full Decl. Ex. B.  The terms and conditions for the Plan are separately available on a website to users who click a link labeled "Register Your Plan."[2] Compl. ¶ 13.  The terms and conditions are not distributed with the brochure and allegedly differ materially from the representations set forth in the brochure distributed to consumers at the Office Depot store.  *Id.* ¶¶ 13-14; *see also id.* ¶¶ 16-18 (asserting that there are 26 categories of exclusions set forth in the terms and conditions for the Plan that do not appear in the Plan's brochure).

In May 2007, Sanbrook's computer froze and she sought to have it repaired under the Plan. *Id.* ¶ 22.  Office Depot allegedly refused to repair the computer, asserting that it was still under the manufacturer's warranty.  *Id.* ¶ 23.  Sanbrook then sought to have the problem fixed by the manufacturer, only to be told that the problem was not covered by the manufacturer's warranty.  *Id.* ¶ 24.  Sanbrook again contacted Office Depot and requested on-site repair of the computer, but was told that Office Depot did not offer on-site repair.  *Id.* ¶ 25.  Sanbrook ultimately hired a third party to repair the computer at a cost of $650.00.  *Id.*

Sanbrook complained to Office Depot and received a refund of her $119.99 purchase price for the Plan.  *Id.* ¶ 26.  She was also refunded approximately half of what she paid for the third party repair of her computer, for a total refund of $450.00.  *Id.*  Sanbrook claims to have sustained damages in the amount of the interest lost on the funds paid to Office Depot (or the amount gained by Office Depot during the time Office Depot held Sanbrook's funds) as well as "consequential damages of approximately $323.00."  *Id.* ¶ 27.

On October 12, 2007, Sanbrook filed a putative class action against Office Depot in the Superior Court of California for the County of Santa Clara asserting causes of action for (1) violation of Cal. Bus. & Prof. Code § 17200; (2) violation of the Consumer Legal Remedies Act

---

[1]  This brochure is attached to the complaint as Exhibit 2.

[2]  The terms and conditions are attached to the complaint as Exhibit 3.

("CLRA"), Cal. Civ. Code § 1750; (3) violation of the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1790; (4) unjust enrichment; (5) breach of contract; (6) fraud; and (7) negligent misrepresentation.  On November 7, 2007, Office Depot removed the action to this court. Office Depot now moves for summary judgment on Sanbrook's individual claim.

## II. ANALYSIS

### A.    Summary Judgment as to Sanbrook's Individual Claim

Office Depot first contends that Sanbrook lacks standing to seek an injunction because Sanbrook's extended warranty plan has now expired.  Next, Office Depot argues that because Office Depot did agree to repair Sanbrook's computer, refunded the Plan purchase price, and paid double Sanbrook's repair costs, Sanbrook has suffered no damages. Finally, Office Depot argues that it is entitled to summary judgment because Sanbrook suffered no injury because her computer malfunctioned because of a software problem, which is not covered under the Plan.

### 1.    Standing to Seek an Injunction

Office Depot argues that Sanbrook lacks standing to seek an injunction because her Extended Warranty plan has expired, and thus she is under no threat of future injury.  In its order granting in part and denying in part Office Depot's motion to dismiss, the court wrote, "assuming Sanbrook still has coverage for her computer under the Plan, there is still a likelihood that some repair or replacement of the computer may be required during the time remaining on the plan."  In so finding, the court held that Sanbrook had standing to seek an injunction at the outset of her lawsuit. *See Friends of the Earth v. Laidlaw*, 528 U.S. 167, 180 (2000). However, it appears that Sanbrook's injunction request is now moot. "To qualify as a case fit for federal-court adjudication, an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997) (internal quotations omitted). Therefore, even if Sanbrook's Plan were not deemed rescinded based upon her refund, the Plan has expired. Therefore, her injunction suit is moot.  Nevertheless, if she has a continuing damages claim, the action cannot be dismissed as moot.

United States District Court
For the Northern District of California

### 2.    The Compensation Sanbrook Received

Office Depot next argues that Sanbrook has suffered no damage because 1) Office Depot attempted to fix her computer; and 2) Office Depot's reimbursement for certain costs she incurred exceeds any amount Sanbrook could claim in damages.  Sanbrook responds that Office Depot did not, in fact, fix her computer, and, furthermore, that she has incurred additional consequential damages to which she is entitled.

In breach of contract actions, the appropriate measure of damages is the "benefit of the bargain," that is, compensation sufficient to "place [the injured party] in the same position he would have been in had the promisor performed." *Coughlin v. Blair*, 41 Cal.2d 587, 603 (1953).  For tort actions, the appropriate measure is "the amount which will compensate for all the detriment proximately caused." Cal. Civ. Code § 3333.

Office Depot claims that the $438.39 it reimbursed Sanbrook exceeds the amount of consequential damages under both of these measures.  Sanbrook argues that she is due other consequential damages, including "expenses paid to Geek Squad to help her recover and transfer [the files Office Depot deleted]." Pl.'s Opp. to Office Depot's Mot. Summ. J. 14.  Office Depot responds that these costs were not a result of the Office Depot's refusal to fix Sanbrook's computer, but rather "flow from the attempted courtesy repair."

Office Depot's contention seems to assume that the courtesy repair is factually distinct from the alleged breach of the Plan.  But Office Depot's attempt, and apparent failure, to repair the computer is as much a breach of the Plan as any initial refusal to service it would have been.  If Sanbrook incurred costs because the attempt to fix the computer created other problems, they may be compensable in her breach of contract action.

Because causation is an issue of fact, the disagreement between Sanbrook and Office Depot raises a genuine dispute of material fact as to whether the consequential damages Sanbrook seeks were all caused by the alleged breach of contract and fraud.  *Iolab Corp. v. Seaboard Sur. Co.*, 15 F.3d 1500, 1506 fn.4 (9th Cir. 1994) (citing *Onciano v. Golden Palace Restaurant*, 219 Cal.App.3d 385, 394-95 (1990)).  Summary judgment is therefore inappropriate on the basis of damages.

United States District Court
For the Northern District of California

### 3.    The Nature of Plaintiff's Computer Problem

Office Depot's additionally argues that summary judgment is appropriate because Sanbrook's computer malfunctioned because of a software problem, which is not covered under the Plan. Thus, Office Depot contends, any harm to Sanbrook was unrelated to the terms of the contract or the representations surrounding it, and Sanbrook thus has no claim for damages. Office Depot's Mot. for Summ. J. 12. Office Depot points to the conclusion of those who tried to fix Sanbrook's computer: HP's telephone technical support that the computer malfunction was due to some sort of "dreadful virus." Office Depot performed a destructive install which, according to Office Depot's reply brief, reflects that it "found nothing wrong with the computer's hardware. And in successfully repairing the computer, the Geek Squad concluded that the computer malfunction was due to software. According to the declaration of Geek Squad Deputy Field Marshall Christopher Fast ("Fast"), the problem was that "the printer was frozen and this was what was causing the computer not to boot properly." Decl. of Christopher Fast ¶ 9. The Geek Squad repairperson then performed a "power cycle" on the printer, which involves unplugging the printer, waiting a few minutes, and reconnecting it. *Id.* After that the printer and computer functioned properly. *Id.* According to Fast, there is no indication that any hardware repairs were ever performed. *Id.* ¶ at 13.

Sanbrook responds that her computer problem was indeed hardware-related. According to the submitted Declaration of James Lundeen ("Lundeen")[3], it is not possible that the problem was software related because the error occurred before the computer had loaded the operating system; it was still in "BIOS check mode." Decl. of James Lundeen ¶ 9. Lundeen also states that, had the problem with the computer been software-related, the "destructive reinstall" performed by Office Depot would have fixed the problem, but it did not. *Id.* at ¶ 13. Instead, Lundeen states that the problem was, in his opinion, caused either by a defective USB port or by a failure of the printer's firmware. *Id.* at ¶ 10.

---

[3] Office Depot objects to Lundeen's declaration on the grounds that the factual bases for his opinions are not contained in his declaration. The court finds that Lundeen's declaration satisfies the requirements of Rule 56. Lundeen states that he bases his opinions on his review of Geek Squad documents and his knowledge of the computer systems at issue. Lundeen Decl. ¶¶ 2-11.

**United States District Court**
For the Northern District of California

1   Office Depot argues that Mr. Lundeen's declaration and reasoning do not constitute the

2   "significant probative evidence" necessary to avoid summary judgment.  Reply Mem. ISO Office

3   Depot's Mot. for Summ. J. 3 (citing *Fazio v. City & County of San Francisco*, 125 F.3d 1328, 1331

4   (9th Cir. 1997)). Office Depot focuses on the fact that Lundeen "has presumably been paid as a

5   retained expert" and that his conclusion is therefore less credible than those in Office Depot's offered

6   evidence.  But it is "axiomatic that disputes about material facts and credibility determinations must

7   be resolved at trial, not on summary judgment." *McGinest v. GTE Service Corp.*, 360 F.3d 1103,

8   1115 (9th Cir. 2004).  And indeed, at the summary judgment stage, "[t]he evidence of the

9   non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* (quoting

10  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).  Assessing the credibility of Lundeen's

11  testimony compared with Office Depot's evidence is a proper matter for trial, not summary

12  judgment. Although the evidence of a hardware problem is slim, it is enough to survive summary

13  judgment.[4]

14  ### III. ORDER

15  For the reasons stated above, Office Depot's motion for summary judgment as to Sanbrook's

16  individual claim is denied.  Office Depot's objection to the declaration of James Lundeen declaration

17  is overruled.  His qualifications and foundation for his opinions are adequate.

18

19  DATED:      02/18/09

20  _Ronald M Whyte_
    RONALD M. WHYTE
    United States District Judge

21

22

23

24

25

---

26  [4]  Plaintiff argues that "[s]ince the injury to Plaintiff occurred at the point of sale, whether any

27  *specific* problem should or should not have been afforded coverage is irrelevant."  Pl.'s Opp. at 10.
    The court does not find this argument persuasive assuming it understands plaintiff's contention. If

28  the problem was an uncovered software problem, whether defendant failed to provide coverage for
    an illegitimate reason or not seems irrelevant because plaintiff would not have been entitled to the
    benefits of the Plan for a problem not covered.

**United States District Court**
For the Northern District of California

1

**Notice of this document has been electronically sent to:**

2

**Counsel for Plaintiff:**

3

| | |
|---|---|
| Scott Richard Kaufman | lemonatty@gmail.com |
| Barbara Quinn Smith | bqsesq@aol.com |
| Marnie Cherie Lambert | mlambert@dmlaws.com |
| Thomas K. Caldwell | tkcaldwell@mhclaw.com |

4

5

**Counsel for Defendants:**

6

| | |
|---|---|
| David Michael Walsh | davidwalsh@paulhastings.com |
| Robin Jonathan Samuel | rjsamuel@hhlaw.com |
| Julie Shepard | jashepard@hhlaw.com |
| Laura Michelle Wilson | lmwilson@hhlaw.com |

7

8

9

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

10

11

12

13

**Dated:**      02/18/09                         JAS
                                    **Chambers of Judge Whyte**

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28