# MADDOX HARGETT & CARUSO, P.C.

Representing Investors

Mark E. Maddox[2]
Thomas A. Hargett[1]
Steven B. Caruso[3]
Thomas K. Caldwell[5]
Keith L. Griffin[1]
Barbara Quinn Smith[4]
T. John Kirk[1]

9853 Johnnycake Ridge Road
Suite 302
Mentor, OH 44060
440.354.4010
440.848.8175 fax

www.investorprotection.com

**Indianapolis**
10100 Lantern Road
Suite 150
Fishers, IN 46037
317.598.2040
317.598.2050 fax

**New York**
80 Broad Street
Fifth Floor
New York, NY 10004
212.837.7908
212.837.7998 fax

March 18, 2009

The Honorable Ronald M. Whyte
United States District Court, Northern District of California
280 South 1st Street, Courtroom 6
San Jose, CA 95113

      RE:    *Sanbrook v. Office Depot, et al.*
                  United States District Court for the Northern District of California
                  Case No. 08-05938

Dear Judge Whyte:

      I write in response to the Court's March 6, 2009 Order Regarding Plaintiff's Motion for Class Certification, in which the Court requested comment from the parties as to 1) whether the Song-Beverly class defined therein satisfies Rule 23(b)(3)'s predominance requirement; and 2) whether Sanbrook's claim is typical of those in the proposed Contract Class.

**<u>The Song-Beverly Class</u>**

      Predominance is analyzed by reviewing the type of evidence that will be offered to prove each element of the claim for which class treatment is sought. Song-Beverly requires that:

> The contract shall be available for inspection by the buyer prior to purchase and either the contract, or a brochure which specifically describes the terms, conditions, and exclusions of the contract, and the provisions of this section relating to contract delivery, cancellation, and refund, shall be delivered to the buyer at or before the time of purchase of the contract.

Cal. Civ. Code §1794.41(a)(2). The evidence needed to prove this claim focuses solely on Office Depot's conduct - either it made the terms and conditions available for inspection as required by the statute or it did not. Discovery conducted to date indicates that Office Depot had a corporate policy which dictated the manner in which the terms and conditions were distributed; each store followed the same procedure. Not only do common questions predominate with respect to this claim, it is likely that there will be *no* individual issues.

### The "Contract Class"

Typicality is a requirement that is easily satisfied. See, e.g., *Santoro v. Aargon Agency, Inc.*, 252 F.R.D. 675, 681-682 (D. Nev. 2008) ("Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical."); *Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.*, 209 F.R.D. 159, 164 (C.D. Cal. 2002) ("The typicality requirement has been liberally construed.")

Plaintiff understands that the Court is concerned with whether Ms. Sanbrook satisfies the typicality requirement because she eventually received a refund of the purchase price of the Plan. The Ninth Circuit has previously noted that a class representative who received a refund of charges central to the dispute may nevertheless be typical of the class. In *Sisley v. Sprint Communs. Co., L.P.*, 284 Fed. Appx. 463, 468 (9th Cir. 2008), the plaintiff brought suit against Sprint alleging that it had wrongfully charged a fee related to the provision of long distance service. Sprint credited the Named Plaintiff's account for the disputed charge prior to the time the suit was filed. In considering these facts, the Ninth Circuit noted that:

> Rule 23(a)(3) focuses on 'the defendants' conduct and plaintiff's legal theory.' *Id.* at 734 (quoting *Simpson v. Fireman's Fund Ins. Co.,*, 231 F.R.D. 391, 396 (N.D. Cal. 2005) (internal quotations omitted). A plaintiff's claims for wrongful phone charges may be typical of the class even if the named plaintiff has been reimbursed for the wrongful charges.

   This result is appropriate because typicality is not affected by the fact that the Plaintiff may be entitled to a different type of damages than those sought by the Class. Ms. Sanbrook must demonstrate that Office Depot breached its contract or committed fraud or misrepresentation in order to recover the damages she seeks in this litigation. In doing so, she will also prove the claims of the Class. For that reason alone, her claims are typical of the class she seeks to represent. *See, Wilcox Dev. Co. v. First Interstate Bank of Oregon, N.A.*, 97 F.R.D. 440, 443-44 (D. Or. 1983)("[T]his Court notes that [plaintiff] received only a partial refund and to recover further **will have to prove the same elements as customers who have not been refunded at all**. This Court concludes that Singer's interests are aligned with the class and that typicality is undoubtedly satisfied.) (emphasis added); *Wyatt v. Creditcare, Inc.*, 2005 U.S. Dist. LEXIS 25787, 15-16 (N.D. Cal. 2005) (finding typicality requirement satisfied where the named plaintiff's "interest in establishing that Defendants' conduct violated the FDCPA and CA FDCPA is not diminished by the type or amount of damages available for recovery.")

   In this instance, Ms. Sanbrook has unquestionably suffered compensable damages. In ruling on Office Depot's Motion for Summary Judgment, the Court noted that "Office Depot's attempt, and apparent failure, to repair the computer is as much a breach of the Plan as any initial refusal to service it would have been. If Sanbrook incurred costs because the attempt to fix the computer created other problems, they may be compensable in her breach of contract action." ... "[There is] a genuine dispute of material fact as to whether the consequential damages Sanbrook seeks were all caused by the alleged breach of contract and fraud." Order Denying Defendant's Motion for Summary Judgment, at 4.

   Plaintiff also wishes to address the additional language the Court proposes to add to the "Contract Class" sought by Ms. Sanbrook. The definition proposed by the Court limits the Class to those "who submitted a request for service under the Plan." The Contract Class proposed by Ms. Sanbrook included all persons who purchased a Plan in California between September 1, 2004 and August 31, 2006. Plaintiff offers the following analogy to describe the misconduct that would go unpunished if the Contract Class is limited in the manner proposed by the Court.

Suppose an insurance company offers an insurance policy to its customers whereby it promises to insure "gold widgets" in return for a premium payment of $1,000 for each policy. Assume that the insurance company has no intention whatsoever of actually providing the coverage or paying any claims submitted on any "gold widgets" covered by the insurance. Despite its secret intention to sell an insurance policy on items it does not actually intend to insure, it sells 1,000 policies for $1,000 each, collecting $1,000,000 in premiums. Further assume that only 5% of the policy holders actually incur a loss and make a claim. Since the insurance company had no intention to pay any claims, these claims are denied. The majority of policy holders do not have the wherewithal to fight the claim denial, so the insurance company has a policy of "paying off" the very few persons who are angry enough to make a lot of noise by simply refunding their original $1,000 premium. A highly profitable, albeit dishonest and unethical business model if allowed to stand.

The real question is this: are the customers who paid a premium for the insurance entitled to be reimbursed for the worthless insurance they bought, even if they never make a claim? The answer is yes. Such persons paid value for something they did not receive – a legitimate insurance policy. The insurance company in this example sold "fool's gold." Plaintiff maintains that customers who purchased such a phony insurance product should get their money back. Here, Office Depot sold a Plan promising "Day One Coverage" (among other things) that it did not and could not provide. Tens of thousands of consumers paid millions of dollars for this "insurance" that they never received, regardless of whether they ever filed a claim. To limit the members of the Contract Class to those consumers who submitted a claim would reward Office Depot, and other businesses, for selling a product that it never intended to deliver nor did deliver. The contract with class members was breached not when Office Depot refused service in response to a claim, but rather at the point of sale. For these reasons, Plaintiff submits that the Contract Class should be defined as follows:

> All persons who purchased a Performance Protection Plan from Office Depot in California during the period from September 1, 2004 through August 31, 2006.

### The "Fraud/Misrepresentation Class"

The two proposed class definitions do not appear to allow for certification of Plaintiff's fraud and misrepresentation claims. As set forth in our memorandum and at oral argument, we believe these claims are, in this instance, well suited for class treatment. In fact, this case presents exactly the set of facts which allow the element of reliance to be proven by inference.

In its sur-reply, Office Depot cited to *Gonzalez v. Proctor & Gamble Co.*, 247 F.R.D. 616, 623 (S.D. Cal. 2007), for the proposition that a presumption of reliance is available only in limited circumstances in securities fraud cases. But in *Rivera v. Bio Engineered Supplements & Nutrition, Inc.*, 2008 U.S. Dist. LEXIS 95083 (C.D. Cal. Nov. 13, 2008), the court specifically rejected *Gonzalez*, holding that because it was confronted with a state law claim for fraud, the California Supreme Court's holding in *Vasquez v. Superior Court*, 4 Cal. 3rd 800 (1971), was binding upon it. In *Vasquez*, the court found that "[t]he rule in this state and elsewhere is that it is not necessary to show reliance upon false representations by direct evidence. The fact of *reliance* upon alleged false representations *may be inferred from the circumstances attending the transaction* which oftentimes afford much stronger and more satisfactory evidence of the inducement which prompted the party defrauded to enter into the contract than his direct testimony to the same effect." *Id.* at 972. Therefore in this case, reliance upon Office Depot's false representations in its Plan brochure may likewise be presumed, and a class may be certified with respect to these tort claims.

We are available at the Court's convenience to further discuss these issues.

VERY TRULY YOURS,
MADDOX, HARGETT & CARUSO

BY: Barbara Quinn Smith