UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| MARY SANBROOK, on behalf of herself and all others similarly situated, | Case No. C 07-05938 RMW (PVT) |
| Plaintiffs, | **MEMORANDUM IN SUPPORT OF MOTION FOR ORDER (1) GRANTING PRELIMINARY APPROVAL OF** |
| vs. | **PROPOSED CLASS ACTION** |
| OFFICE DEPOT, INC., a corporation, and DOES 1-20, | **SETTLEMENT; (2) CONDITIONALLY CERTIFYING SETTLEMENT CLASS (3) APPROVING CLASS NOTICE; (4)** |
| Defendants. | **APPOINTING CLASS COUNSEL; AND (5) SETTING FINAL APPROVAL HEARING DATE AND RELATED DATES** |
| | Date: February 26, 2010 |
| | Time:  9:00 am |
| | Courtroom: 6 |
| | Judge: Hon. Ronald M. Whyte |

I.   **INTRODUCTION**

        Plaintiff respectfully submits for the Court's preliminary consideration a proposed

class action settlement ("Settlement") with Defendant Office Depot, Inc. ("Office Depot") that

resolves the claims asserted in Plaintiff's complaint.

        This is a class action against Office Depot arising from the sale of extended

service contracts known as Performance Protection Plans ("PPPs"), which since September 2004

have been administered for Office Depot by a third party called Warranty Corporation of

America, Inc..  Warranty Corporation of America is now an indirect wholly-owned subsidiary of

NEW Customer Service Companies, Inc. (collectively, "WaCA");

        Plaintiff Mary Sanbrook filed this action on behalf of herself and all others

similarly situated on October 12, 2007, alleging claims for violations of the California Unfair

Competition Law, violation of the California Consumer Legal Remedies Act, violation of the

California Song-Beverly Consumer Warranty Act ("Song-Beverly"), unjust enrichment, breach of

contract, fraud, and negligent misrepresentation in connection with the sale of PPPs to California

consumers.

        After litigating the case for over a year, the parties entered into settlement

negotiations which were initially unsuccessful, after which the parties proceeded to vigorously litigate this matter.  During that time, the parties participated in substantive motion practice, and extensive discovery exchange including depositions. In October 2009, meaningful settlement discussions resumed and the parties attended a second mediation session.  Substantive negotiations continued from day to day until the parties reached an agreement in principle on November 9, 2009, which was memorialized in a memorandum of understanding.  The Parties executed the final Settlement Agreement on February 1, 2010.  As detailed below, the Settlement provides outstanding relief to the Class, featuring a partial cash refund for affected class members.

In finalizing the Settlement terms, the parties have taken care to ensure that the Settlement is fair, adequate and reasonable.  The Settlement provides for thorough distribution of a detailed and easy-to-read Notice; immediate and meaningful relief to Class members; reasonable attorneys' fees and costs; and a stipend in recognition of the Class Representative's service to the Class.

With this motion, Plaintiff seeks preliminary approval of the Settlement Agreement, and provisional certification of a California state-wide class for purposes of providing the Class with notice of the Settlement and an opportunity to opt-out or object.  The proposed Settlement satisfies all criteria for preliminary settlement approval under Ninth Circuit law. Accordingly, Plaintiff moves the Court to take the initial steps in the settlement approval process by: (1) granting preliminary approval to the proposed Settlement; (2) provisionally certifying the proposed settlement Class; (3) appointing as Class Counsel Maddox Hargett & Caruso, David P. Meyer & Associates, Co., LPA, and California Lemon Lawyers; (4) approving the proposed forms of Notice; and (5) scheduling the final fairness hearing and related dates as proposed by the parties.

## II.     STATEMENT OF THE FACTS

### A.     Factual Background

Plaintiff Mary Sanbrook filed this case on behalf of herself and all other similarly situated individuals in California on October 12, 2007.  Plaintiff alleges deceptive and unlawful conduct in marketing and selling its PPP to California consumers. The PPP is offered for sale by Defendant to consumers who purchase certain items such as computers and peripherals.  Defendant sells the Plan in its stores throughout the United States, as well as online. Complaint ¶ 8.

On July 24, 2006, Plaintiff saw Office Depot's advertisements and purchased from Office Depot a two-year Plan along with her desktop computer and printer.  In May, 2007, Plaintiff's computer froze and she sought to have the problem repaired by Office Depot on-site under the "100% coverage" purportedly provided by the Plan.  Defendant denied that the problem experienced by the Plaintiff was covered under the Plan, and refused to repair her computer. Defendant's stated reason for its refusal was that the computer was still covered by the manufacturer's warranty.  Named Plaintiff brought this action alleging, *inter alia,* that Office Depot had failed to make the full terms and conditions of the Plan available to her at the point of sale.

Office Depot has, at all times, denied Plaintiff's allegations and any liability arising from the marketing and/or sale of the PPPs.

### B.     Procedural History

On October 12, 2007, Plaintiff filed a class action complaint against Office Depot, alleging clams for violations of the California Unfair Competition Law, violation of the California Consumer Legal Remedies Act, violation of Song-Beverly, unjust enrichment, breach of contract, fraud, and negligent misrepresentation in connection with the sale of PPPs to California consumers.  The case was filed originally in the Santa Clara County Superior Court, and was transferred to this Court pursuant to the Class Action Fairness Act, 28 U.S.C. §1332 and §1453.

On December 3, 2007, Office Depot filed its motion to dismiss the Complaint, seeking dismissal of each and every cause of action.  In an order dated May 5, 2008, the Court granted in part and denied in part Office Depot's motion. On July 25, 2008 Plaintiff filed a Motion for Class Certification and on September 19, 2008 Office Depot filed their opposition to Plaintiff's Motion for Class Certification. Office Depot also filed a Motion for Summary Judgment on October 28, 2008.  In Orders dated February 18, 2009 and March 30, 2009, the Court denied Office Depot's Motion for Summary Judgment and granted in part and denied in part Plaintiff's Motion for Class Certification, certifying a class of "All persons who purchased the Performance Protection Plan form Office Depot in California after October 12, 2004 and to whom the terms of the Performance Protection Plan were not made available for inspection prior to purchase." Order pg. 9.

In addition to the substantive motion practice outlined above, the parties made initial disclosures pursuant to FRCP 26(f) and completed extensive discovery, including a deposition of the Plaintiff, prior to reaching agreement about the settlement terms.  In the fall of 2008, the parties began settlement discussions.  In the weeks and months that followed, the parties mediated twice and had multiple arm's-length discussions, which ultimately led to an agreement in principle on November 9, 2009.  The parties informed the Court that they had reached an agreement in principle and jointly requested that the Court toll all pending deadlines and stay the proceedings to afford the parties the opportunity to focus their efforts on negotiation of the final Settlement Agreement.  The Settlement Agreement was finalized and executed by the parties on or about February 1, 2010.

### C.    The Parties Have Thoroughly Investigated the Case

Plaintiff's counsel was first contacted about this matter in May, 2007, when Plaintiff Sanbrook complained that Office Depot had not lived up to the promises made to her, and others, regarding her PPP.  Class Counsel acted quickly to investigate Sanbrook's claims, confirming for themselves that Office Depot's marketing materials did in fact misrepresent the terms of the PPP.

Throughout the investigation and litigation of this matter, Plaintiff's Counsel has

1   been in contact with multiple Class members, whose experience mirrors Plaintiff's. *Smith Decl.*,

2   ¶¶ 5, Ex. 2. Based on the feedback Class Counsel has received, Plaintiff is confident that the relief

3   offered pursuant to the Settlement—namely, a partial cash refund of the purchase price of the

4   PPP—will make whole any Class member who was disappointed by the service contract they

5   received.

6   **III.    THE PROPOSED SETTLEMENT**

7           The Settlement's details are contained in the Settlement Agreement signed by the

8   parties, a copy of which is attached as Exhibit A to this memorandum.  For purposes of

9   preliminary approval, the following summarizes the Settlement Agreement's terms:

10          **A.    Settlement Class**

11          The "Settlement Class" means, and shall include, all persons who purchased a PPP

12  from an Office Depot store in the State of California from October 13, 2004, through October 11,

13  2007, as to whom: (i) The terms and conditions of the PPP were not made available before

14  purchase and/or were not delivered at the time of purchase; and (ii) The PPP was not returned for

15  a refund, and no other reimbursement for the PPP was received from Office Depot or WaCA.

16          Notwithstanding the above, the "Settlement Class" or "Class" shall not include: (i)

17  Office Depot's officers, directors, employees, agents, counsel and their assigns; (ii) all persons

18  who have already settled or otherwise compromised or released their PPP Claim; (iii) all persons

19  who elect to Opt-Out; and (iv) any judge in the United States District Court for the Northern

20  District of California.

21          **B.    Settlement Claims Process**

22          To be eligible for Settlement relief, a Class member must complete a Claim Form,

23  signed under penalty of perjury under the laws of the United States of America, provide the

24  minimum required documents to participate in the Settlement, depending on the level of relief

25  they are seeking as detailed further below and in the Settlement Agreement attached hereto, and

26  postmark the claim form by the end of the claims period. Class members will be directed to send

27  all claim forms and required documents to a Claims Administrator, to be agreed upon by the

28  parties, that is skilled in administering class settlements.  The Claims Administrator will make

every reasonable effort to ensure that all Class members who submit claims forms timely are able to participate.

### C.     <u>Relief to Class Members</u>

Settlement Class Members who file a timely, complete, and accurate claim form will receive a **CASH** refund, depending on the level of relief to which they are qualified. As described in detail in the Settlement Agreement, different levels of relief are as follows:

     a.   <u>Repair PPPs purchased from October 13, 2004, through August 14, 2006</u>:  Members of the Settlement Class who purchased Repair PPPs from October 13, 2004, through August 14, 2006, shall be entitled to reimbursement from Office Depot, payable by check, as follows:

          1.  One-year PPP:  Reimbursement of sixty percent (60%) of the PPP purchase price

          2.  Two-year PPP:  Reimbursement of thirty percent (30%) of the PPP purchase price

          3.  Three-year PPP:  Reimbursement of twenty percent (20%) of the PPP purchase price

     b.   <u>Repair PPPs purchased from August 15, 2006, through October 11, 2007</u>:  Members of the Settlement Class who purchased Repair PPPs from August 15, 2006, through October 11, 2007, shall be entitled to reimbursement from Office Depot, payable by check, as follows:

          1.  Two-year PPP:  Reimbursement of twenty-one percent (21%) of the PPP purchase price

          2.  Three-year PPP:  Reimbursement of fourteen percent (14%) of the PPP purchase price

     c.   <u>Replacement PPPs purchased from October 13, 2004, through October 11, 2007</u>:  Members of the Settlement Class who purchased Replacement PPPs from October 13, 2004, through October 11, 2007, shall be entitled to reimbursement from Office Depot, payable by check, in an amount equal to fifteen percent (15%) of the PPP purchase price.

No later than fifteen (15) days after the Effective Date, Office Depot will send (or cause to be sent) the relief available to those Settlement Class Members who timely submitted Claim Forms and the proper documentation..

Memorandum in Support of Motion for
Preliminary Approval of Class Action
Settlement         - 6 -       Case No. C 07-05938 RMW (PVT)

### D.   Attorneys' Fees And Costs

Office Depot has agreed that it will not object to a request by Class Counsel to the Court for an award of reasonable attorneys' fees, costs, and expenses totaling $2,275,000, which is to be paid by Office Depot.  Class Counsel agrees that it will not seek, and the parties agree that Office Depot shall not be obligated to pay, any award of reasonable attorneys' fees, costs, and expenses that exceeds $2,275,000 in total.   As explained below, Class Counsel will ask the Court for permission to use $20,000 of this award to augment the Incentive Award to the Named Plaintiff.

Class counsel did not negotiate fees prior to reaching an agreement upon the substantive terms of the settlement.  No other agreement exists between the Parties as to the payment of attorneys' fees and costs.  The Court's approval of the Settlement shall not be conditioned in any way on the Court's approval of Class Counsel's fee application.

### E.   Named Plaintiff's Incentive Award

In recognition of the extraordinary time and effort Mrs. Sanbrook expended in pursuing the lawsuit and in fulfilling her obligations and responsibilities as Class Representative, and of the benefits conferred on all of the Class Members by the Settlement, Class Counsel will ask the Court to make an incentive award in the amount of $30,000.  Office Depot agrees that it will not object to a request by Class Counsel to the Court for an incentive award to the Settlement Class Representative of $10,000, which is to be paid by Office Depot.  Class Counsel intends to ask the Court for permission to pay the balance of the incentive award from its fees.  The parties agree that Office Depot shall not be obligated to pay any incentive award exceeding $10,000 for Plaintiff Sanbrook.

### F.   Settlement Administration And Notice

As set forth in the Settlement Agreement, all costs of notice and claims administration will be paid by Office Depot.  A Claims Administrator will be selected to assist in the notice of class members and the administration of the Settlement.  Class Counsel has reviewed and approved the forms of notice and the method of notice distribution described in the Settlement Agreement.  The parties have agreed that Notice shall be in the form attached as

1   Exhibits B and D to the Settlement Agreement.  Notice shall be sent via first class mail to Class

2   Members, of whom WaCA and Office Depot have addresses, within thirty (30) days of

3   preliminary approval by the Court.  Additionally, for all other Class members, Office Depot and

4   the Claims Administrator will arrange for notice, in a major California publication to be agreed

5   upon by the Parties, two (2) times within thirty (30) days of preliminary approval.

6   **IV.    PRELIMINARY APPROVAL OF THE SETTLEMENT AND PROVISIONAL
        CERTIFICATION OF THE SETTLEMENT CLASS**

7

8        **A.     Settlement And Class Action Approval Process**

9            As a matter of "express public policy," federal courts strongly favor and encourage

10  settlements, particularly in class actions and other complex matters, where the inherent costs,

11  delays, and risks of continued litigation might otherwise overwhelm any potential benefit the

12  class could hope to obtain.  *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir.

13  1992) (noting that "strong judicial policy . . . favors settlements, particularly where complex class

14  action litigation is concerned"); *see also* 4 *Newberg on Class Actions* § 11.41 (4th ed. 2002)

15  (citing cases).  The traditional means for handling claims like those at issue here—individual

16  litigation—would unduly tax the court system, require a massive expenditure of public and

17  private resources, and given the relatively small value of the claims of the individual Class

18  members, would be impracticable.  The proposed Settlement therefore is the best vehicle for

19  Class members to receive the relief to which they are entitled in a prompt and efficient manner.

20          The *Manual for Complex Litigation* describes a three-step procedure for approval

21  of class action settlements:

22      (1)   Preliminary approval of the proposed settlement at an informal hearing;
        (2)   Dissemination of mailed and/or published notice of the settlement to all affected
              class members; and

23      (3)   A "formal fairness hearing" or final settlement approval hearing, at which class
              members may be heard regarding the settlement, and at which evidence and
24            argument concerning the fairness, adequacy, and reasonableness of the settlement
              may be presented.
25

26  *Manual for Compl. Lit.*, at § 21.63.  This procedure, used by courts in this Circuit and endorsed

27  by class action commentator Prof. Newberg, safeguards class members' due process rights and

28  enables the court to fulfill its role as the guardian of class interests.  4 *Newberg* § 11:25.

1    With this motion, Plaintiff requests that the Court take the first step in the

2 settlement approval process by granting preliminary approval of the proposed Settlement and

3 Notice to the Class.  The purpose of preliminary evaluation of proposed class action settlements is

4 to determine whether the settlement is within the "range of reasonableness," and thus whether

5 notice to the class of the settlement's terms and the scheduling of a formal fairness hearing is

6 worthwhile.  *Id.*  The decision to approve or reject a proposed settlement is committed to the

7 Court's sound discretion.  *See City of Seattle*, 955 F.2d at 1276 (in context of class action

8 settlement, appellate court cannot "substitute [its] notions of fairness for those of the [trial] judge

9 and the parties to the agreement," and will reverse only upon strong showing of abuse of

10 discretion).

11    The Court's grant of preliminary approval will allow all Class members to receive

12 notice of the proposed Settlement's terms and the date and time of the "formal fairness hearing,"

13 or final Settlement approval hearing, at which Class members may be heard regarding the

14 Settlement, and at which further evidence and argument concerning the fairness, adequacy, and

15 reasonableness of the Settlement may be presented.  *See Manual for Compl. Lit.*, at §§ 13.14,

16 21.632.  Although the parties have requested a hearing with oral argument, neither formal notice

17 nor a hearing is required at the preliminary approval stage; the Court may grant such relief upon

18 an informal application by the settling parties, and may conduct any necessary hearing in court or

19 in chambers, at the Court's discretion.  *Id.* at § 13.14.

20    **B.    The Criteria For Settlement Approval Are Satisfied**

21    The purpose of preliminary evaluation of a proposed class action settlement is to

22 determine whether the settlement is within the "range of reasonableness," and thus whether notice

23 to the class of the terms and conditions of the Settlement, and the scheduling of a final approval

24 hearing, are worthwhile.  4 *Newberg* § 11.25.

25    A proposed Settlement may be finally approved by the trial court if it is

26 determined to be "fundamentally fair, adequate, and reasonable."  *City of Seattle*, 955 F.2d at

27 1276.  While consideration of the requirements for *final* approval is unnecessary at this stage, all

28

of the relevant factors weigh in favor of the Settlement proposed here.[1]  In affirming the

settlement approved by the trial court in *City of Seattle*, the Ninth Circuit Court of Appeals noted

that a trial court "need not reach any ultimate conclusions on the contested issues of fact and law

which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and

avoidance of wasteful and expensive litigation that induce consensual settlements."  *Id.* at 1291

(internal quotation and citation omitted).  The district court's ultimate determination "will involve

a balancing of several factors" which may include:

> the strength of plaintiffs' case; the risk, expense, complexity, and
> likely duration of further litigation; the risk of maintaining class
> action status throughout the trial; the amount offered in settlement;
> the extent of discovery completed, and the stage of the proceedings;
> the experience and views of counsel . . . and the reaction of the
> class members to the proposed settlement.

*Id.*

### 1.   The Settlement is the Product of Serious, Informed, and Arm's-Length Negotiations

The Court's role is to ensure that "the agreement is not the product of fraud or

overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a

whole, is fair, reasonable and adequate to all concerned."  *Hanlon*, 150 F.3d at 1027 (internal

quotes and citations omitted).  Where, as here, a proposed class settlement has been reached after

meaningful discovery and arm's length bargaining, conducted by capable counsel, and the

proponents of the settlement are counsel experienced in similar litigation, the settlement should

be entitled to a presumption of fairness. *See, e.g.,* 4 Newberg on Class Actions § 11:41 (4th ed.)

("There is usually an initial presumption of fairness when a proposed class settlement, which was

negotiated at arm's length by counsel for the class, is presented for court approval.").

The Settlement here is the result of intensive, arm's-length negotiations between

experienced attorneys who are familiar with class action litigation in general and with the legal

---

[1] Plaintiff will address in detail each of the factors required for final settlement approval in their Motion for Final Approval of the Settlement, to be submitted prior to the final fairness hearing.

1   and factual issues of this case in particular.  Counsel for both parties are particularly experienced

2   in the litigation, certification, trial, and settlement of nationwide class action cases.  In negotiating

3   this Settlement, Plaintiffs' counsel had the benefit of years of experience combined with their

4   familiarity with the facts of this case.

5          Settlement negotiations in this case began in October 2008, and continued off and

6   on until November 2009, when the parties reached an agreement-in-principle, subject to client

7   approval, on all substantive terms of the settlement.  *Smith Decl*., ¶ 7.  During that time, the

8   parties conducted two mediations.   The first, in November 2008, was conducted by Retired Judge

9   Charles Legge, through JAMS' San Francisco office.   The second mediation was conducted by

10  Mark Buckstein, a nationally renowned mediator from Boca Raton, Florida.

11         The parties were able to agree on the major points of settlement with the help of

12  Mr. Buckstein.  The parties continued to negotiate the details of the Settlement Agreement itself

13  thereafter.  The final Settlement Agreement was executed on or about February 1, 2010.

14  Plaintiffs' Counsel supports the resulting Settlement as fair, and as providing reasonable relief to

15  the members of the class.  *Smith Decl*., ¶ 8.

16         **2.     The Settlement Provides Substantial Relief for Class Members**

17         The Settlement provides for Settlement Class members, who choose to participate, a

18  partial **CASH** refund of the original purchase price of their PPP. Class members may submit a

19  simple claim to request the relief available under the Settlement.

20         **3.     The Risks of Continued Litigation and Trial Counsel in Favor of
            Settlement**

21

22         The Settlement also provides Class members with benefits that they would not

23  enjoy if the case were to proceed to trial.  First, the Settlement provides Class members with

24  prompt and efficient relief.  Proceeding to trial would add years to the resolution of this case and

    could be further delayed by appeals.  Second, the Settlement enables Class members to avoid the

25  risks of going to trial at all.  Although Plaintiff and the Class believe they would prevail at trial,

26  the outcome of a trial is uncertain.  The Settlement ensures that Class members will be granted

27  relief if they submit timely qualified claims.  Third, the Settlement negates the extraordinary time

28

1   and expense that would be incurred if this case were to proceed to trial.  Even if the Class were

2   successful in winning at trial, it would not see any relief until after many potential appeals and

3   many years, if at all.  As a result, the relief provided to Class Members in accordance with this

4   Settlement is more than adequate.

5          **C.**     **Provisional Certification Of The Settlement Class Is Appropriate**

6          Finally, Plaintiffs request that the Court provisionally certify a California state-

7   wide class for settlement purposes.  At this point in the approval process, provisional certification

8   permits notice of the proposed Settlement to issue to the class to inform class members of the

9   existence and terms of the proposed Settlement, of their right to be heard on its fairness, of their

10  right to opt out, and of the date, time and place of the formal fairness hearing.  *See Manual for*

11  *Compl. Lit.*, at §§ 21.632, 21.633.  Provisional certification of a class is appropriate in part

12  because Office Depot waives its challenges to class certification in the context of this Settlement.

13  In such circumstances, *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998), provides the

14  roadmap for the Court's consideration of certification issues.

15              **1.**     **The Proposed Settlement Class Mirrors the Type of Settlement**
                        **Authorized by the United States Supreme Court**
16

17          The United States Supreme Court's opinion in *Amchem Prods., Inc. v. Windsor*, 521 U.S.

18  591, 620, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997), confirmed the propriety, and recognized the

19  necessity, of settlement class certification in cases involving identifiable and easily identified

20  class members, and relatively small, essentially identical, and objectively calculable economic

21  damages.  Noting that Federal Rule of Civil Procedure 23(b)(3) aims primarily at vindicating "the

22  rights of groups of people who individually would be without effective strength to bring their

23  opponent into court at all," the Supreme Court declared cases like this one to be the paradigm for

24  class treatment:

25

26          The policy at the very core of the class action mechanism is to overcome the
            problem that small recoveries do not provide the incentive for any individual to
27          bring a solo action prosecuting his or her rights.  The class action solves this
            problem by aggregating the relatively paltry potential recoveries into something
28          worth someone's (usually an attorney's) labor.

1    *Amchem*, 521 U.S. at 617 (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir.

2    1997)).

3          The present action, which involves a single defendant, a single alleged course of  conduct

4    common to all Class members, and economic (rather than personal injury) damages, is precisely

5    the type of "core" class action endorsed in *Amchem*.  Without this class action—and without this

6    settlement—most Class members would be "without effective strength to bring their arguments

7    into court at all."  *Amchem*, 521 U.S. at 617.  Unlike the class disapproved in *Amchem*, which

8    presented individualized personal injury issues and future-injury classes, the proposed Class here

9    seeks only economic damages, and Class members' injuries have already occurred.  Under these

10    circumstances, class certification, has long been held proper.  *See, e.g., Hanlon*, 150 F.3d at 1019-

11    23.

12          **2.**       **The Parties Proposed Change to the Class Definition is Appropriate in Light of the Evidence.**

13

14

15          As the Court is aware, it previously certified a class defined as:

16          All persons who purchased the Performance Protection Plan from Office Depot in California after October 12, 2004 and to whom the

17          terms of the Performance Protection Plan were not made available for inspection prior to purchase.

18

19    March 30, 2009 Order on Class Certification at pg. 9.  The parties engaged in extensive discovery

20    subsequent to this Order, and it quickly became apparent that Office Depot made significant

21    changes both to the brochure it used to sell the Plan and to the manner in which terms and

22    conditions were made available to Plan purchasers after the date the Named Plaintiff purchased

23    the Plan.   Specifically, in August, 2006, the sales brochure was revised to acknowledge that

24    coverage under the Plan began after the manufacturer's warranty expired.  In October, 2007,

25    Office Depot began a series of material changes to its marketing of the Plan and the way that Plan

26    terms and conditions were made available to purchasers.   Named Plaintiff has determined that

27    that date is an appropriate cut-off date for the class period.  For this reason, the parties have

28

Memorandum in Support of Motion for
Preliminary Approval of Class Action
Settlement
    - 13 -     Case No. C 07-05938 RMW (PVT)

agreed upon a class definition slightly different from that previously certified by the Court.  The Court's ruling that the requirements of Rule 23(a) and (b) are satisfied is in no way impacted by this change in definition.

### D.   Notice

#### 1.   The Proposed Notice Program Is Constitutionally Sound

"Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *Manual for Compl. Lit., supra*, at § 21.312.  Many of the same considerations govern both certification and settlement notices.  In order to protect the rights of absent class members, the Court must provide the best notice practicable to class members.  *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811–12, 70 S. Ct. 652, 94 L. Ed. 865 (1985); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174–175, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974); *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S. Ct. 652, 94 L. Ed. 2d 865 (1950).  As the *Manual for Compl. Lit.* observes:  "Rule 23 . . . requires that individual notice in [opt-out] actions be given to class members who can be identified through reasonable efforts.  Those who cannot be readily identified must be given the 'best notice practicable under the circumstances.'"  *Manual for Compl. Lit., supra*, at § 21.311.  According to the *Manual for Complex Litigation, supra*, at § 21.312, the settlement notice should:

- Define the class;
- Describe clearly the options open to the class members and the deadlines for taking action;
- Describe the essential terms of the proposed settlement;
- Disclose any special benefits provided to the class representatives;
- Provide information regarding attorneys' fees;
- Indicate the time and place of the hearing to consider approval of the settlement, and the method for objecting to or opting out of the settlement;
- Explain the procedures for allocating and distributing settlement funds, and, if the settlement provides different kinds of relief for different categories of class members, clearly set out those variations;

- Provide information that will enable class members to calculate or at least estimate their individual recoveries; and

- Prominently display the address and phone number of class counsel and the procedure for making inquiries.

The proposed forms of Notice, attached as Exhibits B and D to the Settlement Agreement, satisfy all of criteria above.  In addition, the Parties have agreed to a notice dissemination plan that is likely to reach the vast majority of Class members.  The Class Notice will be sent via first class mail to those class members for whom Office Depot or WaCA has a record of their address.  To those whose addresses are not known by Office Depot, a publication notice will be run in a major California publication twice during the claims period.

**2.    <u>Office Depot Will Provide Required Notice to Governmental Officials.</u>**

Pursuant to the Class Action Fairness Act, 28 U.S.C. 1715, Office Depot is required to provide Notice of the Settlement, in the form proscribed therein to appropriate governmental officials.  Office Depot has represented in the Settlement Agreement that it intends to fully comply with this requirement.

**E.    <u>Scheduling a Final Approval Hearing Is Appropriate</u>**

The last step in the Settlement approval process is a final fairness hearing at which the Court may hear all evidence and argument necessary to make its Settlement evaluation. Proponents of the Settlement may explain the terms and conditions of the Settlement, and offer argument in support of final approval.  In addition, Settlement Class Members, or their counsel, may be heard in support of or in opposition to the Settlement Agreement.  The Court will determine after the final approval hearing whether the Settlement should be approved, and whether to enter a final order and judgment under Rule 23(e).  Plaintiff requests that the Court set a date for a hearing on final approval on  June 11, 2010.

**V.    <u>CONCLUSION</u>**

For all of the foregoing reasons, Plaintiffs respectfully request that the Court grant preliminary approval of the proposed Settlement; appoint as Class Counsel Maddox Hargett Caruso, P.C.,  David P. Meyer & Associates, Co., LPA and California Lemon Lawyers; provisionally certify the proposed settlement class; approve the proposed Notice Plan and forms

1    of notice; and schedule a formal fairness hearing on final settlement approval on June 11, 2010.

2

3    Dated: February 3, 2010                    Respectfully submitted,
                                                 MADDOX HARGETT & CARUSO

4

5                                        By:    /sBarbara Quinn Smith
                                                 Barbara Quinn Smith

6                                        Barbara Quinn Smith (Ohio Bar 0055328)
                                         (admitted *pro hac vice*)
7                                        9853 Johnnycake Ridge Road,   Suite 302
                                         Mentor, OH 44060
8                                        Telephone: 440-354-4010
                                         Facsimile: 440-848-8175
9

10                                       Scott R, Kaufman, SBN 190129
                                         **CALIFORNIA LEMON LAWYERS**
11                                       1400 Coleman Ave Suite C-14
                                         Santa Clara, CA 95050
12                                       Telephone: (408) 727-8882
                                         Facsimile:  (408) 727-8883
13

14                                       Thomas A. Hargett (Indiana Bar 11252-49)
                                         (admitted *pro hac vice*)
15                                       Thomas K. Caldwell (Indiana Bar 16001-49
                                         (admitted *pro hac vice*)
16                                       **MADDOX HARGETT & CARUSO**
                                         10100 Lantern Road
17                                       Suite 150
                                         Fishers, IN 46038
18                                       Telephone: 317-598-2040
                                         Facsimile: 317-598-2050
19

20                                       Marnie Lambert (SBN 165019)
21                                       **DAVID P. MEYER & ASSOCIATES, CO., LPA**
                                         1320 Dublin Road, Suite 100
22                                       Columbus, Ohio 43215
                                         Telephone:  (614) 224-6000
23                                       Facsimile:  (614) 224-6066

24

25                                       *Attorneys for Plaintiff and the Proposed Class*

26

27

28

Memorandum in Support of Motion for
Preliminary Approval of Class Action          - 16 -        Case No. C 07-05938 RMW (PVT)
Settlement

1

2

3

4

**<u>CERTIFICATE OF SERVICE</u>**

5

6

     I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on February 3, 2010.

7

8

Dated:  February 3, 2010                    Respectfully submitted,

9

                                        /s/ Barbara Quinn Smith
                                        Barbara Quinn Smith

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28