Barbara Quinn Smith (Ohio Bar 0055328)
(admitted *pro hac vice*)
9853 Johnnycake Ridge Road, Suite 302
Mentor, OH 44060
Telephone: 440-354-4010
Facsimile: 440-848-8175
bqsmith@mhclaw.com

Additional counsel listed below

*Attorneys for Plaintiff and the Settlement Class*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| MARY SANBROOK, on behalf of herself and all others similarly situated,<br><br>Plaintiffs,<br>vs.<br><br>OFFICE DEPOT, INC., a corporation, and DOES 1-20,<br><br>Defendants. | Case No. C 07-05938 RMW (PVT)<br><br>**MEMORANDUM IN SUPPORT OF PLAINTIFF'S REQUEST FOR ATTORNEYS' FEES AND EXPENSES**<br><br>Date: July 9, 2010<br>Time: 9:00 am<br>Courtroom: 6, 4TH Floor<br>Judge: Hon. Ronald M. Whyte |

# INTRODUCTION

Plaintiff requests an award of attorneys' fees and costs totaling $2,275,000, and a service award to the class representative totaling $30,000 for the services she rendered to the Class throughout the litigation, resulting in a valuable Settlement. The requested amount of $2,275,000 is inclusive of both attorneys' fees and litigation costs, and will be paid, subject to the Court's approval, by Office Depot, Inc. ("Office Depot"), separately from and in addition to (and not out of) the relief made available to the Class. After reimbursement of $92,936 in costs, the remainder for fees is $2,182,064. Thus, the requested fee amounts to a modest 1.4 multiplier on Class Counsel's combined lodestar of $1,554,754, generated through 4,623 hours of work on this case since its inception. The average hourly rate for the legal services performed by Class Counsel is $336.

As discussed below, this request for attorneys' fees and costs is squarely supported by the lodestar method of calculating attorneys' fees recognized under Ninth Circuit and California law. The fee request is eminently reasonable in light of the amount of work necessary to achieve the outstanding result Class Counsel obtained for the Class, which provides for *cash* refunds, in amounts depending on the level of relief to which they are qualified, for any Class member who submits a qualified claim. The request for a service award to the Plaintiff for her service to the Class is also supported by Ninth Circuit and California law and the facts of this case. Office Depot does not oppose the request for attorney fees or the service award.

### A. Factual Background

Plaintiff Mary Sanbrook filed this case on behalf of herself and all other similarly situated individuals in California. Plaintiff alleges deceptive and unlawful conduct in marketing and selling its Performance Protection Plans ("PPP" or "Plan") to California consumers. The PPP is offered for sale by Defendant to consumers who purchase certain items such as computers and peripherals. Defendant sells the Plan in its stores throughout the United States, as well as online. Complaint ¶ 8. The Complaint alleges that the PPP provides no coverage for consumer products sold by Office Depot during the time the manufacturers' warranties are still in effect, despite

Office Depot's advertising of the Plan as providing "100% parts and labor coverage from day one." Complaint ¶ 1.

Office Depot has, at all times, denied Plaintiff's allegations and any liability arising from the marketing and/or sale of the PPPs.

### B. Procedural History

On October 12, 2007, Plaintiff filed a class action complaint against Office Depot, alleging claims for violations of the California Unfair Competition Law, violation of the California Consumer Legal Remedies Act, violation of Song-Beverly, unjust enrichment, breach of contract, fraud, and negligent misrepresentation in connection with the sale of PPPs to California consumers. The case was filed originally in the Santa Clara County Superior Court, and was transferred to this Court pursuant to the Class Action Fairness Act, 28 U.S.C. §1332 and §1453.

On December 3, 2007, Office Depot filed its motion to dismiss the Complaint, seeking dismissal of each and every cause of action. In an order dated May 5, 2008, the Court granted in part and denied in part Office Depot's motion. On July 25, 2008, Plaintiff filed a Motion for Class Certification and on September 19, 2008, Office Depot filed its opposition to Plaintiff's Motion for Class Certification. Office Depot also filed a Motion for Summary Judgment on October 28, 2008. In Orders dated February 18, 2009, and March 30, 2009, the Court denied Office Depot's Motion for Summary Judgment and granted in part and denied in part Plaintiff's Motion for Class Certification, certifying a class of "All persons who purchased the Performance Protection Plan from Office Depot in California after October 12, 2004 and to whom the terms of the Performance Protection Plan were not made available for inspection prior to purchase." Order pg. 9.

In addition to the substantive motion practice outlined above, the parties made initial disclosures pursuant to FRCP 26(f) and completed extensive discovery, including a deposition of the Plaintiff and depositions of Office Depot's representatives, prior to reaching agreement on the settlement terms. Indeed, motion practice regarding discovery issues was also extensive in this case, involving multiple motions to compel, as well as an ancillary litigation in the Northern

District of Georgia involving Plaintiff's efforts to receive documents from Warranty Corp. of America, the administrator of the PPP. The need for protracted discovery motion practice can best be measured by the fact that prior to the time the Court heard Plaintiff's First Motion to Compel, Office Depot had produced approximately 7,255 pages of documents; it ultimately produced 368,354 pages.

### C. The Parties Have Thoroughly Investigated the Case

Plaintiff's counsel was first contacted about this matter in May 2007, when Plaintiff complained that Office Depot had not lived up to the promises made to her and others regarding the PPP. Class Counsel acted quickly to investigate Sanbrook's claims, confirming for themselves that Office Depot's marketing materials misrepresented the terms of the PPP. Throughout the investigation and litigation of this matter, Class Counsel has also been in contact with multiple Class members whose experience mirrors Plaintiff's.

### D. The Parties Litigated the Action Aggressively

This case was litigated aggressively by Office Depot, such that Class Counsel was forced to spend significant time and effort in its prosecution. Aside from the extensive discovery efforts that were necessary in this case (including third party discovery that required ancillary litigation in federal court in Georgia), Class Counsel defeated Office Depot's motion to dismiss, defeated Office Depot's motion for summary judgment, was forced by Office Depot to prosecute several successful discovery-related motions (two motions to compel, a motion for an order to show cause, and a motion to take a second 30(b)(6) deposition of Office Depot, along with defeating a motion for reconsideration filed by Office Depot), and successful in achieving the certification of a class. Indeed, the case docket currently lists 234 separate entries. Furthermore, Class Counsel reviewed over 354,000 pages of documents that Office Depot produced during the litigation. The work performed by Class Counsel in this case was necessitated by the aggressive defense of this action undertaken on behalf of Office Depot by not one, but three different large corporate law firms during the pendency of this case.

### E. Settlement Negotiations

Settlement negotiations in this case began in October 2008, and continued off and on until November 2009, when the parties reached an agreement-in-principle, subject to client approval, on all substantive terms of the settlement. During that time, the parties conducted two mediations with two separate mediators, both of whom are nationally respected. The first, in November 2008, was conducted prior to class certification by Retired Judge Charles Legge, through JAMS' San Francisco office. It was unsuccessful in large measure because Office Depot believed that a class would not be certified. The second mediation, which occurred after Class Counsel had achieved class certification, was conducted by Mark Buckstein, a renowned mediator from Boca Raton, Florida, during which time the parties were able to agree on the major points of settlement. The parties did not discuss or negotiate attorneys' fees or costs or any incentive award for Ms. Sanbrook until after they had agreed upon the settlement's substantive terms. The one-day mediation with Mr. Buckstein lasted 13 hours. The final Settlement Agreement was executed in January 2010. Class Counsel supports the resulting Settlement as fair, and as providing reasonable relief to the members of the class.

### F. Preliminary Approval

On February 3, 2009, Plaintiff submitted a Motion for Preliminary Approval of the Settlement. Plaintiff asked the Court to grant preliminary approval of the proposed Settlement; to provisionally certify the proposed settlement class; to appoint Ms. Sanbrook as class representative; to approve the notice plan and forms of settlement notice and order provision of such notice; to appoint the firms of Maddox Hargett Caruso, David P. Meyer & Associates, Co., LPA and California Lemon Lawyers as Class Counsel; and to schedule a final fairness hearing.

## CLASS COUNSELS' REQUEST FOR AN AWARD OF ATTORNEYS' FEES AND COSTS IS WELL-SUPPORTED

### A. Legal Standard

Under both California and Ninth Circuit precedent, a court may exercise its discretion to award attorneys' fees by applying either the lodestar/multiplier method or the percentage-of-the-

fund method. *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 253 (2001); *Hanlon v. Chrysler Group*, 150 F.3d 1011, 1029 (9th Cir. 1998); *Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002).

Counsel who represent a class and produce a benefit for the class members are entitled to be compensated for their services, especially where, as here, the defendant has stipulated to the payment *in addition to* the recovery for the class. Indeed, as the California Supreme Court has explained, in a purely contingent case like this, a fee based upon lodestar and enhanced by a multiplier "constitutes earned compensation; unlike a windfall, it is neither unexpected nor fortuitous. Rather, it is intended to approximate market-level compensation for such services, which includes a premium for the risk of nonpayment or delay in payment of attorney fees." *Ketchum v. Moses*, 24 Cal. 4th 1122, 1138 (Cal. 2001). As such, "a contingent fee must be higher than a fee for the same legal services paid as they are performed." *Id.* at 1132.

Lodestar is derived by multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate. *McElwaine v. US West, Inc*., 176 F.3d 1167, 1173 (9th Cir. 1999); *PLCM Group v. Drexler*, 22 Cal. 4th 1084, 1095 (2000). After examining the time and labor required of the attorneys, the lodestar then is enhanced using a multiplier that depends upon relevant factors.

Where, as here, the Settlement has a claims-made structure, with no upper cap on the form of relief, the Settlement cannot be characterized as a true "fund" for the purpose of a percentage-of-the-fund fee analysis. In the absence of such a true common fund, the requested attorneys' fees typically lend themselves more readily to a lodestar/multiplier analysis. Further, because the attorneys' fees will be assessed against Office Depot *without reducing the relief available to consumers*, the lodestar method is appropriate. *See Hanlon,* 150 F.3d at 1029 (noting that lodestar method is used more often in a case where "there is no way to gauge the net value of the settlement or any percentage thereof.")

Regardless of the method a court applies, the fundamental requirement is that the resulting fee must be fair and reasonable. *Staton v. Boeing Co.*, 327 F.3d 938, 963-64 (9th Cir. 2003). As

PLTF'S BRIEF ISO REQUEST RE: AWARD OF ATTORNEYS' FEES AND SERVICE AWARD TO CLASS REP

demonstrated below, the request for $2,275,000 in attorneys' fees and costs in this case is fair and reasonable.

### B. Class Counsel's Fee Request Is Appropriate Under The Lodestar Method

The lodestar method provides courts an objective basis upon which to determine the value of the services provided by counsel. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Multiplying the numbers of hours counsel worked by a reasonable hourly rate establishes the lodestar. After examining the time and labor required, the Court applies a multiplier to the lodestar that may vary depending on certain factors. These factors were laid out in *Kerr v. Screen Extras Guild. Inc.*, 526 F.2d 67, 70 (9th Cir. 1975) and subsequently modified by *Stewart v. Gates*, 987 F. 2d 1450, 1453 (9th Cir. 1993). They include the following:

(1) the time and labor required of the attorney(s);
(2) the novelty and difficulty of the questions presented;
(3) the skill requisite to perform the legal service properly;
(4) the preclusion of the other employment by the attorney(s) because of the acceptance of the action;
(5) the customary fee charged in matters of the type involved;
(6) any time limitations imposed by the client or the circumstances;
(7) the amount of money, or the value of the rights involved, and the results obtained;
(8) the experience, reputation and ability of the attorney(s);
(9) the undesirability of the action;
(10) the nature and length of the professional relationship between the attorney and the client; and
(11) awards in similar actions.

*See also Hanlon*, 150 F.3d at 1029 (a lodestar figure "may be adjusted upward or downward to account for several factors including the quality of the representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment").

#### 1. Class Counsel's Hourly Rates Are Reasonable

The hourly rates that Plaintiff seeks for her counsel are reasonable. In assessing the reasonableness of an attorney's hourly rate, courts should consider the prevailing market rate in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. *Blum v. Stenson*, 465 U.S. 886, 895-96 & n.11 (1984). Courts look to the forum in which the District is located to determine the hourly rates that should apply. *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) ("[a]ffidavits of the plaintiffs'

- 7 -
CASE NO. 08-CV-02041 MMC
PLTF'S BRIEF ISO REQUEST RE: AWARD OF ATTORNEYS' FEES AND SERVICE AWARD TO CLASS REP

attorney[s] and other attorneys regarding prevailing fees in the community, and rate determinations in other cases[, particularly those setting a rate for the plaintiff's' attorney,] are satisfactory evidence of the prevailing market rate" (quoting *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990)).

In this case, Class Counsel are highly regarded members of the bar who are experienced in the area of consumer class actions and complex class action litigation. Counsel's customary rates, which were used for purposes of calculating lodestar here, are reasonable. The average hourly rate for the work performed by Maddox Hargett & Caruso is $331; the average hourly rate for the work performed by the Meyer firm is $355.53; and the hourly rate performed by Mr. Kaufman is $465. These rates are well within the acceptable range. See, e.g., *Hopson v. Hanesbrands, Inc.*, 2009 U.S. Dist. LEXIS 33900, at *1-2 (N.D. Cal. April 3, 2009) (approving hourly rates of $675 and $525 in class action lodestar fee analysis); *Gambrell v. Barhnart*, 2008 WL 4225445 (N.D. Cal. 2008) (approving a requested fee which yielded an hourly rate of $512.82); *Scharlatt v. Astrue*, 2008 WL 5000531 (N.D. Cal. 2008) (finding $450/hr reasonable); *Freitag v. California Dept. of Corrections*, 2009 WL 2485552 (N.D. Cal. 2009) (recommending hourly rates of $525 and $575); *King v. Cigna Corporation*, 2007 WL 4365504 (N.D. Cal. 2007) (finding rates of $450, $425 and $400 per hour reasonable); *Hearn v. Barnhart*, 262 F. Supp. 2d 1033 (N.D. Cal. 2003) (in 2003, approving hourly rate of $450). Class Counsel submits that their hourly rates are undoubtedly lower than the rates of counsel retained by Office Depot in this case.[1]

---

[1] It is noted that the rates charged by Maddox Hargett & Caruso and David P. Meyer & Associates are those it customarily charges in their respective home districts. For example, the rates used here have been approved by the Northern District of Ohio in *Wiatrowski v. Sears Roebuck & Co,* Case No. 1:06CV00637 and *Schwienfurth v. Motorola,* Case No. 1:05CV024, and in the Southern District of Ohio in *Jenkins v. Hyundai Motor Finance*, Case No. 04 CV 720.

### 2. The Number of Hours Class Counsel Worked is Reasonable

The number of hours worked is also reasonable.[2] All three firms made every effort to prevent the duplication of work or inefficiencies that might have resulted from having multiple firms working on the case.

The work Class Counsel did was meaningful. Class Counsel: (1) investigated and filed the action; (2) responded to inquiries throughout their investigation, and collected facts from individuals who made inquiries; (3) performed extensive discovery, including a deposition of the Plaintiff, the review of thousands of pages of documents produced by Office Depot and its administrator, Warranty Corp. of America, and successfully pursuing multiple motions to compel the discovery of additional information; (4) defeated numerous motions, including a motion to dismiss and a motion for summary judgment; (5) was successful in achieving the certification of a class; (6) crafted a Settlement after extensive investigation and arm's-length negotiations; and (7) moved for preliminary approval of the Settlement.

Class Counsel's responsibilities will continue throughout the claims process and even beyond final approval by the Court. Class Counsel will remain available to answer any Class Member inquiries and to work to remedy any issues that may arise with respect to this settlement. Based on prior experience, this ongoing work may well add hundreds of hours of work by Class Counsel and their staff.

Not only have the hours that Class Counsel put into this case to date been reasonable and necessary, but they also served the public good by providing substantial compensation to consumers who suffered a loss from the purchase of the PPP. Class Counsel's efforts have succeeded in serving important public purposes and in compensating the Class for the damages it

---

[2] It is well established that Plaintiff's counsel is "not required to record in great detail how each minute of his time was expended." *Hensley v. Eckerhart*, 461 U.S. 424, 437 n.12 (1983). Instead, counsel need only "identify the general subject matter of his time expenditures." *Id.* (citations omitted); *see also Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000) (concluding that "a summary of the time spent on a broad category of tasks such as pleadings and pretrial motions" met "basic requirement" of documentation). If the Court prefers to review Class Counsels' detailed time records, Class Counsel will willingly make them available for *in camera* review.

suffered. Thus, Class Counsel respectfully submits that this Court should find that all of the hours Class Counsel spent in this action were reasonably incurred.

### C. A Modest Multiplier is Warranted

In this case, the requested fee amount of $2,275,000 includes both attorneys' fees and costs. Of the requested $2,275,000 total, $92,936 is for reimbursement of costs, leaving $2,182,064 for attorneys' fees. Class Counsel's total hours are 4,623 and total lodestar is $1,554,754. (Smith Decl., ¶ 7-9; Wilson Decl., ¶ 7-8; Kaufman Decl., ¶ 4.) Thus, the requested fee award reflects a modest multiplier of 1.4 on Class Counsel's current lodestar. As Class Counsel will continue to expend time on this case from now until well after Final Approval, this already modest multiplier will continue to become even more modest.

Consideration of the relevant enhancement factors demonstrates that the modest multiplier requested here is reasonable and warranted.

#### 1. The Results Achieved

As discussed in detail in Plaintiff's Memorandum filed in support of Preliminary Approval, the Settlement provides significant relief for all affected Class members. All eligible Class members will receive relief in the form of a cash refund, dependent upon the relief for which they qualify. Importantly, Class Counsel achieved this outstanding result in a relatively expeditious manner, without the delay, expense and risk of trial.

Courts have long recognized that the result obtained by Class Counsel is a principal factor in considering an enhanced lodestar multiplier:

> The "results obtained" factor can properly be used to enhance a lodestar calculation where an exceptional effort produced an exceptional benefit. In other words, as stated by a leading treatise, "[t]he California cases appear to incorporate the 'result obtained' factor into the 'quality' factor: *i.e.*, high-quality work may produce greater results in less time than would work of average quality, thus justifying a multiplier." (Pearl, *Cal. Attorney Fee Awards* (Cont. Ed. Bar 2d ed. 1998) § 13.6, p. 327).

*Thayer v. Wells Fargo Bank*, 92 Cal. App. 4th 819, 838 (2001) (alteration in original). In calculating an appropriate fee, "counsel should be rewarded, not punished" for helping to obtain a

prompt settlement without running up lodestar through needless litigation. *Lealao*, 82 Cal. App. 4th at 52-53. Accordingly, the lodestar method "permits the court to recognize and reward achievements of a particularly resourceful attorney who secures a substantial benefit for his clients with a minimum of time invested." *Merola v. Atlantic Richfield Co.*, 515 F.2d 165, 168 (3d Cir. 1975). *See also Arenson v. Board of Trade of City of Chicago*, 372 F. Supp. 1349, 1358 (N.D. Ill. 1974) (noting potential for far greater lodestar absent settlement, thereby justifying a lodestar multiplier of four). The outstanding results achieved by Class Counsel here fully justify the requested fee.

### 2. The Novelty and Difficulty of the Questions Involved

Virtually all false advertising and breach of warranty class actions are complex and involve risk. Indeed, although there have been a number of Song-Beverly Warranty Act-related class action cases over the years, there is very little case law at all on the particular aspects of that statute at issue in this case. Plaintiff's theory of liability and damages were largely novel and untested. While Class Counsel believe their theories are viable, the outcome of additional summary judgment proceedings or a trial is by no means assured.

### 3. Whether the Fee is Contingent

Class Counsel undertook this class action on a purely contingent basis, with no assurance of recovering expenses or attorneys' fees. Nevertheless, Class Counsel spent significant time and resources to prosecute the case successfully on behalf of the Class, and will continue to represent the Class in the course of the claims process. Counsel's willingness to take this risk weighs in favor of a multiplier on lodestar. *Kerr*, 526 F.2d at 70.

### 4. The Experience, Reputation and Ability of the Attorneys

The reputation, experience, and ability of Class Counsel were essential to success in this litigation. As noted in the declarations submitted herewith, Class Counsel have substantial experience in consumer class action litigation. (Smith Decl., ¶ 2, Ex. A; Wilson Decl., ¶ 2, Ex. A.) Class Counsel's skills in defeating Office Depot's repeated motions and convincing Office Depot and its highly sophisticated counsel of Office Depot's litigation exposure were essential to achieving this Settlement. Class Counsel's history of aggressive, successful prosecution of

consumer class actions made credible their commitment to pursue this litigation until Office Depot provided a fair result for the Class members. Through their skill, reputation, and ability, Class Counsel was able to obtain a settlement that provides an outstanding result for Class members.

### D. The Multiplier Requested Is Below The Range Normally Applied In This District

The 1.4 multiplier requested is significantly less than that typically awarded to successful class counsel. As Judge LaPorte recently indicated in *Hopson v. Hanesbrands Inc.,* 2009 U.S. Dist. LEXIS 33900, 36 (N.D. Cal. Apr. 3, 2009), the Ninth Circuit has previously noted that acceptable multipliers have ranged from "0.6-19.6 with most from 1.0-4.0 and a bare majority in the 1.5-3.0 range", citing *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1051, n.6 (9th Cir. 2002).

### E. Class Counsel's Request For Reimbursement Of Costs Is Also Reasonable

"Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit from the settlement." *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996) (*citing Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 391-392 (1970)); *see also Staton,* 327 F.3d at 974. The requested costs must be relevant to the litigation and reasonable in amount. *In re Media Vision*, 913 F. Supp. at 1366.

Throughout the course of this litigation, Class Counsel had to incur unreimbursed, out-of-pocket costs totaling $92,936. (Declarations of Smith ¶ 9 and Wilson ¶ 8.) These costs included: (1) filing fees; (2) copying, mailing, faxing and serving documents; (3) conducting computer research; and (4) experts; (5) deposition and court transcripts; and (6) travel. Class Counsel put forward these significant out-of-pocket costs without assurance that they would ever be repaid. The expenses incurred were necessary to secure the resolution of this litigation. *See In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177-78 (S.D. Cal. 2007) (finding that costs such as

filing fees, photocopy costs, travel expenses, postage, telephone and fax costs, computerized legal research fees, and mediation expenses are relevant and necessary expenses in a class action litigation).

The proposed class notice will inform Class Members that Class Counsel will seek a combined award of fees and costs of $2,275,000. In light of the expenses Class Counsel incurred to bring this case to settlement, Class Counsel's request for a total award of $2,275,000, inclusive of costs, is reasonable.

**A SERVICE AWARD TO THE NAMED PLAINTIFF IS APPROPRIATE**

Plaintiff requests a service award of $30,000. This stipend does not affect or reduce the benefits to the Class in any way. Incentive awards are routinely approved in class actions to "encourage socially beneficial litigation by compensating named plaintiffs for their expenses on travel and other incidental costs, as well as their personal time spent advancing the litigation on behalf of the class and for any personal risk they undertook." *Jones v. Dominion Res. Servs.*, 601 F. Supp. 2d 756, 767 (S.D. W. Va. 2009). In *Staton*, the Ninth Circuit recognized that "named plaintiffs . . . are eligible for reasonable incentive payments." *Staton*, 327 F.3d at 977. Under *Staton*, such awards should be evaluated using "'relevant factors, includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s] of workplace retaliation.'" *Id.*

As noted above, Office Depot has agreed to pay an incentive award of $10,000. The remainder, $20,000, will be paid from any award of attorney fees received by Class Counsel. When the incentive award is paid from attorney fees awarded to counsel, the level of scrutiny typically given to such awards is lessened. *In re Cendant Corp.*, 232 F. Supp. 2d 327, 344 (D.N.J. 2002)("An incentive payment to come from the attorneys' fees awarded to plaintiff's counsel need not be subject to intensive scrutiny, as the interests of the corporation, the public, and the defendants are not directly affected.")

A. **The Class Has Benefitted From The Considerable Time Named Plaintiff Devoted To This Litigation**

Mrs. Sanbrook's assistance to counsel in this litigation was invaluable in prosecuting this matter, not only because of the amount of time she was willing to devote to the Class, but also because of her considerable experience as a paralegal. Mrs. Sanbrook is a summa cum laude graduate of San Jose State University. From 1980 until 2005, she worked as a paralegal and office manager for a small litigation firm in Palo Alto. The firm's practice concentrated on serious personal injury cases and complex insurance issues. In addition to the day to day management of the firm, Mrs. Sanbrook's work as a paralegal focused on drafting briefs and trial preparation. Following the retirement of the firm's principal in 2005, Mrs. Sanbrook has become a full time volunteer for several charities, including the American Red Cross, where she serves as the leader of the Palo Alto chapter's Hurricane Recovery Program and as an active member of the Disaster Response Team. She also counsels patients at Stanford University's Cancer Center, and organizes food distribution through the Community Services Agency of Mountain View. Her legal and business experience unquestionably allowed her to capably monitor the litigation on behalf of the Class.

The efforts of the named Plaintiff on behalf of the class underscore the propriety of the requested incentive award. Throughout the litigation, Plaintiff performed the following tasks, among others: (1) assisted counsel with the preparation of the complaint and amended complaint; (2) supplied documentation and discovery responses; (3) traveled to meet with counsel at various stages of the litigation; (4) prepared for and attended a deposition; (5) stayed abreast of the settlement negotiations; (6) reviewed the settlement terms; and (7) prepared and submitted declarations to the Court. (*See* Declaration of Mary Sanbrook with attached time records). The efforts of the Plaintiff were instrumental in achieving the Settlement on behalf of the class and justify the modest stipend requested here. *Staton*, 327 F.3d at 977; *In re Mego Fin. Corp. Securities Litig.*, 213 F.3d 454, 463 (9th Cir. 2000). The proposed class notice also informs Class Members of Plaintiff's request for an incentive payment.

In this instance, Mrs. Sanbrook not only devoted considerable time and effort to the litigation, she was also subject to the constant threat of having to turn over her personal computer for examination by Office Depot. Early in the litigation, Office Depot propounded a request for a wholesale examination of Mrs. Sanbrook's computer. The request was reiterated after Office Depot changed counsel. While Mrs. Sanbrook opposed the request on relevancy grounds, she nonetheless understood the risk that continuing with this litigation would require her to subject her personal documents (and those she created in connection with her charitable work) to scrutiny. A Class Representative who perseveres in the face of tactics designed to make prosecuting the litigation painful should be rewarded.

B. **The Amount of the Requested Award Is Comparable to That Awarded To Other Class Representatives**

As the Court noted in the questions regarding the Settlement that it posted prior to the preliminary approval hearing, this incentive award is "on the high side." However, it is not outside of what many courts consider to be the "range of reasonableness".

For example, in *Barcia v. Contain-A-Way, Inc.,* 2009 U.S. District LEXIS 117118, 18-19, Judge Walls of the Southern District of California awarded the Named Plaintiff in an employment action an incentive of $25,000, finding that amount to be "well within the currently accepted range". *Id.* Examples cited by Judge Walls included *Van Vraken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299-300 (N.D. Cal. 1995) (incentive award of $50,000); *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366 (S.D. Ohio 1990) (two incentive awards of $55,000, and three incentive awards of $35,000); *Glass v. UBS Fin. Servs.*, 2007 U.S. Dist. LEXIS 8476 at *51-*52 (N.D.Cal. Jan. 27 2007)(awarding $25,000 service award in FLSA overtime wages class action). Other examples of incentive awards in this range include *Louie v. Kaiser Found. Health Plan, Inc.*, 2008 U.S. Dist. LEXIS 78314 (S.D. Cal. Oct. 6, 2008)($25,000); *Singer v. Becton Dickinson & Co.* 2009 U.S. Dist. LEXIS 114547, 25-26 (S.D. Cal. Dec. 9, 2009)($25,000). In light of Plaintiff's effort to obtain the outstanding result for the Class, Plaintiff requests that the Court approve the payment of an incentive payment of $30,000.

# CONCLUSION

For the reasons stated above, Plaintiff respectfully requests that this Court grant Plaintiff's Motion for Preliminary Approval and, specifically, her request for attorneys' fees and costs of $2,275,000, and award the requested class representative incentive payment of $30,000.

Dated: March 9, 2010　　　　　　　　　MADDOX HARGETT & CARUSO

　　　　　　　　　　　　　　　　　　　By:　/sBarbara Quinn Smith
　　　　　　　　　　　　　　　　　　　　　　Barbara Quinn Smith

　　　　　　　　　　　　　　　　　　　Barbara Quinn Smith (Ohio Bar 0055328)
　　　　　　　　　　　　　　　　　　　(admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　　　9853 Johnnycake Ridge Road, Suite 302
　　　　　　　　　　　　　　　　　　　Mentor, OH 44060
　　　　　　　　　　　　　　　　　　　Telephone: 440-354-4010
　　　　　　　　　　　　　　　　　　　Facsimile: 440-848-8175

　　　　　　　　　　　　　　　　　　　Scott R. Kaufman, SBN 190129
　　　　　　　　　　　　　　　　　　　**CALIFORNIA LEMON LAWYERS**
　　　　　　　　　　　　　　　　　　　1400 Coleman Ave Suite C-14
　　　　　　　　　　　　　　　　　　　Santa Clara, CA 95050
　　　　　　　　　　　　　　　　　　　Telephone: (408) 727-8882
　　　　　　　　　　　　　　　　　　　Facsimile:  (408) 727-8883

　　　　　　　　　　　　　　　　　　　Thomas A. Hargett (Indiana Bar 11252-49)
　　　　　　　　　　　　　　　　　　　(admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　　　Thomas K. Caldwell (Indiana Bar 16001-49
　　　　　　　　　　　　　　　　　　　(admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　　　**MADDOX HARGETT & CARUSO**
　　　　　　　　　　　　　　　　　　　10100 Lantern Road
　　　　　　　　　　　　　　　　　　　Suite 150
　　　　　　　　　　　　　　　　　　　Fishers, IN 46037
　　　　　　　　　　　　　　　　　　　Telephone: 317-598-2040
　　　　　　　　　　　　　　　　　　　Facsimile: 317-598-2050

　　　　　　　　　　　　　　　　　　　Marnie Lambert (SBN 165019)
　　　　　　　　　　　　　　　　　　　Matthew R. Wilson (Ohio Bar 0072925)
　　　　　　　　　　　　　　　　　　　(*pro hac vice* application pending)
　　　　　　　　　　　　　　　　　　　**DAVID P. MEYER & ASSOCIATES, CO., LPA**
　　　　　　　　　　　　　　　　　　　1320 Dublin Road, Suite 100
　　　　　　　　　　　　　　　　　　　Columbus, Ohio 43215
　　　　　　　　　　　　　　　　　　　Telephone:  (614) 224-6000
　　　　　　　　　　　　　　　　　　　Facsimile:  (614) 224-6066

　　　　　　　　　　　　　　　　　　　*Attorneys for Plaintiff and the Settlement Class*

## CERTIFICATE OF SERVICE

This is to certify that on March 9, 2010, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will automatically send email notification of such filing to the attorneys of record.

                                                         /s/ Barbara Quinn Smith
                                                       Attorney for Plaintiff