Barbara Quinn Smith
**MADDOX HARGETT & CARUSO, P.C.**
bqsmith@mhclaw.com
9853 Johnnycake Ridge Road
Suite 302
Mentor, OH 44060
Telephone: 440-354-4010
Facsimile: 440-848-8175

Attorney for Plaintiff
(Additional Counsel Listed Below)

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| MARY SANBROOK, on behalf of herself and all other similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>OFFICE DEPOT, INC., a corporation and DOES 1-20,<br><br>Defendants. | Case No: C 07-05938 RMW<br><br>Judge: Hon. Ronald M. Whyte<br><br>Hearing Date: July 23, 2010<br>Time: 9:00 a.m.<br>Ctrm: 6, Fourth Floor |

## MEMORANDUM IN SUPPORT OF NAMED PLAINTIFF'S MOTION FOR FINAL APPROVAL OF SETTLEMENT

//

//

## Table of Contents

Introduction .................................................................................................................................... 1

I.    The Standards For Judicial Approval Of Class Action Settlements ............................................ 2

II.   The Settlement Meets The Ninth Circuit Standard For Approval ............................................... 4

    A.    The Settlement Is The Result of Arms-Length Negotiations Between The Parties. ............... 4

    B.    The Settlement Is Fair, Adequate and Reasonable ................................................................ 5

        1. The Risk, Expense, Complexity, And Likely Duration Of Further Litigation ......................... 5

        2.   Named Plaintiff's Case Was Strong, But Entailed Risks ....................................................... 5

        3. The Amount Obtained In Settlement ................................................................................... 6

        4. The Extent Of Discovery Completed, And The Stage Of The Proceedings ......................... 7

        5. The Experience And Views Of Class Counsel ..................................................................... 8

        6. Reaction Of The Class Members To The Proposed Settlement ........................................... 9

III.    The Settlement Provided Adequate Notice To The Class ....................................................... 9

# TABLE OF AUTHORITIES

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610 (N.D. Cal.1979) ................................................................ 8

*Glass v. UBS Fin. Servs., Inc.*, 2007 U.S. Dist. LEXIS 8476 (N.D. Cal. Jan. 26, 2007) .................... 8

*Hanlon v. Chrysler Corp.,* 150 F.3d 1011 (9th Cir. 1998) ................................................................ 3

*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.,* 1992 U.S. Dist. LEXIS 14337 (C.D. Cal. June 10, 1992) ................................................................................................................................ 8

*In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555 (C.D. Cal. June 10, 2005) ...................... 8

*In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454 (9th Cir. 2000) ................................................... 3, 5

*In re Omnivision Techs., Inc.,* 559 F. Supp. 2d 1036 (N.D. Cal. 2007) ..................................... 2, 3, 8

*Linney v. Cellular Alaska P'Ship*, 151 F.3d 1234 (9th Cir. 1998) ...................................................... 7

*Lundell v. Dell, Inc.*, 2006 U.S. Dist. LEXIS 90990 (N.D. Cal. Dec. 5, 2006) ................................. 4

*Nat'l Rural Telcoms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) ........................... 7

*Newman v. Stein*, 464 F.2d 689 (2d Cir. 1972) ................................................................................. 7

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) ..................................... 2, 3

*Principe v. Ukropina (In re Pacific Enters. Sec. Litig.),* 47 F.3d 373 (9th Cir. Cal. 1995) ................ 8

*Rodriguez v. W. Publ'g Corp.,* 563 F.3d 948 (9th Cir. 2009) ........................................................... 10

*Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993) ....................................................... 2

*Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943 (9th Cir. 1976) ........................................................ 2

*Weinberger v. Kendrick*, 698 F.2d 61 (2d Cir. 1982) ........................................................................ 3

*West v. Circle K Stores, Inc.,* 2006 U.S. Dist. LEXIS 76558 (E.D. Cal. Oct. 19, 2006) .................... 9

*Woo v. Home Loan Group, L.P.*, 2008 U.S. Dist. LEXIS 65144 (S.D. Cal. Aug. 25, 2008) .......... 2, 3

**Rules**

Rule 23 ............................................................................................................................................ 2, 10

**INTRODUCTION**

Named Plaintiff respectfully submits for final approval a settlement ("Settlement") with Defendant Office Depot, Inc. ("Office Depot") that fully resolves the claims asserted in Named Plaintiff's Complaint.

This class action against Office Depot arises from the sale of extended service contracts known as Performance Protection Plans ("PPPs"). Plaintiff Mary Sanbrook filed this action on behalf of herself and all others similarly situated on October 12, 2007, alleging claims for violations of the California Unfair Competition Law, violation of the California Consumer Legal Remedies Act, violation of the California Song-Beverly Consumer Warranty Act ("Song-Beverly"), unjust enrichment, breach of contract, fraud, and negligent misrepresentation in connection with the sale of PPPs to California consumers. This Court ultimately certified the Song-Beverly claim for class treatment.

After several months of negotiation, the Parties executed a Settlement Agreement on February 1, 2010. As detailed below, the Settlement provides outstanding relief to the Class, in the form of a cash refund for affected class members.

The Settlement is an excellent result for the Class. As discussed below, in reaching the Settlement, the Named Plaintiff and her counsel considered the numerous risks of continued litigation against Office Depot, and believe that the monetary benefits the Settlement provides to the Class outweigh the risks of continued and protracted litigation in which the result was inherently uncertain.

On March 15, 2010, the Court issued an Order Preliminarily Approving Class Action Settlement (the "Preliminary Approval Order") (Doc. No. 242). Pursuant to the Preliminary Approval Order, Notice was mailed to 223,946 Class Members, beginning on April 12, 2010. *See* Administrator's Report and Affidavit of Rachel Braun Wnorowski ("Wnorowski") at ¶ 10. In addition, a summary notice was published in California editions of *Parade* and *USA Weekend* on April 18 and April 25, 2010. *Id.* ¶ 14.

Pursuant to the Preliminary Approval Order, Class Members who wished to file objections to the Settlement must have postmarked their objection no later than June 25, 2010. Not a single objection has been received.

Similarly, Class Members who wished to be excluded from the Class were required to submit that request by June 30, 2010. As of July 9, 2010, approximately 153 Class Members, or .07 percent of the Class, have done so.

## ARGUMENT OF LAW

### I. THE STANDARDS FOR JUDICIAL APPROVAL OF CLASS ACTION SETTLEMENTS

It is well established in the Ninth Circuit that "voluntary conciliation and settlement are the preferred means of dispute resolution," especially in class action lawsuits. *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993); *see also In re Omnivision Techs., Inc.,* 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2007) ("[T]he court must also be mindful of the Ninth Circuit's policy favoring settlement, particularly in class action law suits."). Class actions readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation. It is beyond question that "there is an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976). "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." 4 A. Conte & H. Newberg, *Newberg on Class Actions*, § 11:50 (4th ed. West 2008).

Under Rule 23(e) of the Federal Rules of Civil Procedure, a class action may be settled upon notice of the proposed settlement to class members, and a court finding, after a hearing, that the settlement is fair, reasonable and adequate. *See also Woo v. Home Loan Group, L.P.*, 2008 U.S. Dist. LEXIS 65144 (S.D. Cal. Aug. 25, 2008). On a motion for approval of a class action settlement, "the Court must determine whether the interests of the class will be better served by

resolution of the litigation than by continuation of it." *See In re Washington Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1387 (D. Ariz. 1989).

The Court's role in settlement approval is essentially twofold, determining whether the settlement: (i) is tainted by fraud or collusion; and (ii) is fair, reasonable and adequate. *Officers for Justice*, 688 F.2d at 625. In exercising its discretion to approve the settlement of a class action, a district court should consider the following factors: (1) "the strength of the plaintiff's case"; (2) "the risk, expense, complexity, and likely duration of further litigation"; (3) "the risk of maintaining a class action throughout the trial"; (4) "the amount offered in settlement"[1]; (5) "the extent of discovery completed and the stage of the proceedings"; (6) "the experience and views of counsel"; and (7) "the reaction of the class members to the proposed settlement." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000)); *see also Omnivision,* 559 F. Supp.2d at 1041; *Woo,* 2008 U.S. Dist. LEXIS 65144 (quoting *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1026 (9th Cir. 1998)).

"The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice*, 688 F.2d at 625. In exercising its sound discretion, a district court should not adjudicate the merits of the case. As the Ninth Circuit has noted:

> [T]he settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits. Neither the trial court nor this court is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what *might* have been achieved by the negotiators.

*Officers for Justice,* 688 F.2d at 625 (emphasis added); *see also Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982) ("in order to avoid a trial, the judge must [not] in effect conduct one").

The presumption of reasonableness in this action is fully warranted because the Settlement is the product of arm's-length negotiations presided over by an experienced mediator. *See* Smith

---

[1] The parties' settlement discussions were conducted in confidential mediation sessions, and for this reason this factor is not discussed herein.

Decl., ¶ 4. It is the considered judgment of Class Counsel that this Settlement is a fair, reasonable, and adequate resolution of the litigation and warrants this Court's approval. *Id.* at ¶ 2.

## II. THE SETTLEMENT MEETS THE NINTH CIRCUIT STANDARD FOR APPROVAL

### A. The Settlement Is The Result of Arms-Length Negotiations Between The Parties.

Two mediations were conducted in this case. The first, conducted before The Honorable Charles Legge, was ultimately unsuccessful. The second, conducted before Mark Buckstein, a well known mediator based in Southern Florida, culminated in the settlement that is now before the Court.

By the time settlement discussions began, Class Counsel had a solid understanding of the strengths and weaknesses of the claims, both factually and legally, and was able to engage in a rigorous negotiation process with Defendants.

Additionally, throughout the litigation and settlement negotiations, Office Depot has been represented by experienced counsel from three prominent law firms, first by Paul Hastings and then by Williams & Connolly, with Hogan & Hartson also representing the defense throughout the litigation. All three firms have substantial experience in this type of litigation. The representation of Office Depot was no less rigorous than Class Counsel's representation of the Class.

As a result, the parties' settlement negotiations were both informed and hard-fought. The negotiations consisted of not only a formal fifteen hour mediation session – conducted under the direction of Mark Buckstein, a well-regarded mediator with extensive experience in the mediation of complex actions – but also negotiations over several months following the mediation session. *See* Smith Decl. at ¶ 5.

With this background, there is no doubt that the Settlement was reached without collusion and after good-faith bargaining among the parties. *See Lundell v. Dell, Inc.*, 2006 U.S. Dist. LEXIS 90990 (N.D. Cal. Dec. 5, 2006) (approving class action settlement that was "the result of intensive, arms'-length negotiations between experienced attorneys familiar with the legal and factual issues of this case").

### B. The Settlement Is Fair, Adequate and Reasonable

Analysis of the factors enumerated in *Mego Fin. Corp.* leads to the conclusion that the Settlement is in fact fair, adequate and reasonable.

#### 1. The Risk, Expense, Complexity, And Likely Duration Of Further Litigation

If the litigation had continued, Named Plaintiff faced substantial risks, including establishing Office Depot's liability and the Class' full amount of damages. Counsel took into account the Court's decision to certify only the claims under Song-Beverly for class treatment, and the fact that the parties took very different positions on the requirements of, and damages available under, that statute. Office Depot argued strenuously that it complied with the statute's requirements to "make available" and "deliver" the terms and conditions of the PPP, and that in any event, the purchase price was not the appropriate measure of damages available to the class for violation of the statute. There is no precedent interpreting these provisions of Song-Beverly, so the ultimate outcome was entirely uncertain.

If this Settlement had not been achieved, the action would likely have continued for years and the ultimate result of further litigation cannot be foreseen. Given the stakes involved in this litigation, an appeal is virtually assured regardless of the result of trial. Instead of the lengthy, costly, and uncertain course of further litigation with Office Depot, the Settlement provides an immediate and certain recovery for the Class. The Settlement clearly outweighs the substantial risks associated with lengthy continued litigation. *See* Smith Decl. ¶ 7.

#### 2. Named Plaintiff's Case Was Strong, But Entailed Risks

The stage of the proceedings and the amount of information available to the parties to assess the strengths and weaknesses of their case is one factor that courts consider in determining the fairness, reasonableness, and adequacy of a settlement. *See Mego Fin.*, 213 F.3d at 459. Counsel believes that the settlement terms compare favorably to the risks associated with continued litigation. Class Counsel conducted an extensive investigation and analysis of the claims. Its efforts included, but were not limited to: (1) an exhaustive factual investigation into the events and circumstances underlying the claims, including contacting and interviewing class members; (2) drafting of a detailed Complaint; (3) extensive briefing on Office Depot's Motion to Dismiss and

Motion for Summary Judgment; (4) obtaining evidence through discovery, including review and analysis of the documents produced by Defendants and key third-parties; (5) preparing for depositions; (6) consulting with experts; (7) drafting class certification briefing and supporting documents; and (8) preparing for and participating in two separate mediations. *See* Smith Decl.¶ 5.

After having thoroughly prepared this case, Counsel have concluded that the Settlement is in the best interests of the Class and that the Settlement is fair, reasonable, and adequate. This conclusion is based on, among other things, the risk, time and expense in continuing to prosecute the case; the significant uncertainties in predicting the outcome of this complex litigation; and the substantial risk that the Class would recover less than the amount provided by the Settlement, or nothing at all. *Id. ¶* 6.

### 3. The Amount Obtained In Settlement

As set forth above, the Settlement provides for the recovery of cash to affected class members. As noted above, the settlement amount was obtained as a result of arm's length negotiations overseen by an experienced mediator. Each Class Member who submits a claim (1) certifying that the terms and conditions of the PPP were not made available to them before purchase and/or were not delivered to them at the time of purchase and (2) agreeing to release Office Depot from claims related to the sale of the PPPs as set forth in the Settlement Agreement will receive a cash payment equal to a percentage of the purchase price of the PPP. The percentage varies according to both the type of PPP purchased (i.e., whether it was a replacement or repair plan) and the date that it was purchased.

The primary issue in this case was whether the brochure used to sell the PPP accurately described the coverage available during the first year the PPP was in effect. In crafting the settlement, the parties agreed that, with respect to a one year replacement PPP, 60% of the purchase price was attributable to the service plan, with the other 40% reflecting the cost of technical support and other items that were included with the plan. Similarly, with respect to a two year plan, 30% of the purchase price was attributable to the first year of the service plan; with a three year plan, 20% of the purchase price was attributable to the first year. Class Members who purchased a

replacement PPP during the period October 13, 2004 to October 11, 2007 will receive a full cash refund for the first year of the PPP.

The brochure used to sell the repair PPP was revised in August, 2006 to more accurately reflect the PPP's actual terms and conditions. For that reason, Class Members who purchased the PPP after August 15, 2006 will receive slightly less than a full refund for the first year of coverage (21% of the total purchase price for a two year plan, 14% for a three year plan).

The brochure used to sell replacement PPPs, while not wholly reflective of the PPP's actual terms and conditions were, in Class Counsel's judgment, the least misleading of the three brochures used to sell the PPP. For this reason, replacement PPP purchasers will receive 15% of the purchase price. *See also* Smith Decl. ¶¶ 8-9.

If the litigation had continued, Named Plaintiff and the Class faced substantial risks and limitations. As discussed above, there were risks with respect to establishing the amount of damages available under the statute. In addition, litigating this case to completion would result in significant expense and delay. This recovery, obtained in the face of the risk of no recovery at all, is particularly supportive of approval of the Settlement.

The determination of a "reasonable" settlement is not susceptible to a mathematical equation yielding a particularized sum. Rather, "in any case there is a range of reasonableness with respect to a settlement." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972). In fact, a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial. *See Nat'l Rural Telcoms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) (quoting *Linney v. Cellular Alaska P'Ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (citations omitted)). Here, the substantial benefits available to Class Members indicates that the Settlement falls within the "range of reasonableness."

### 4. The Extent Of Discovery Completed, And The Stage Of The Proceedings

The stage of proceedings and discovery are additional factors supporting the Settlement. Here, Counsel advanced the case through, among other things, the investigation supporting the Complaint, successfully opposing Office Depot's Motion to Dismiss and Motion for Summary

Judgment, consulting with experts, successfully moving to certify the Class, and preparing for and participating in two mediations. In addition, Class Counsel has conducted depositions of two key Office Depot employees, and analyzed a substantial volume of documents produced by both Office Depot and Warranty Corporation of America, the administrator of the PPP. In order to obtain these documents, Named Plaintiff had to file two Motions to Compel in this action. Named Plaintiff also filed an action in the U.S. District Court for the Northern District of Georgia to enforce a subpoena served upon Warranty Corporation of America. Smith Decl. ¶ 5. This Settlement is unquestionably based upon adequate information and a sufficient investigation.

### 5. The Experience And Views Of Class Counsel

Courts recognize that the opinion of experienced counsel supporting the settlement after vigorous arm's-length negotiations is entitled to considerable weight. *See, e.g.*, *Ellis*, 87 F.R.D. at 18 ("the fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight"); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal.1979); *see also In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.,* 1992 U.S. Dist. LEXIS 14337 (C.D. Cal. June 10, 1992) (finding belief of counsel that the proposed settlement represented the most beneficial result for the class to be a compelling factor in approving settlement); *see also Omnivision*, 559 F. Supp. 2d at 1043 (citation omitted) ("The recommendations of plaintiffs' counsel should be given a presumption of reasonableness.") (quoting *Boyd*, 485 F. Supp. at 622). This makes sense, as counsel is "most closely acquainted with the facts of the underlying litigation." *In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555 (C.D. Cal. June 10, 2005)(citations omitted); *Glass v. UBS Fin. Servs., Inc.*, 2007 U.S. Dist. LEXIS 8476 (N.D. Cal. Jan. 26, 2007), *aff'd,* 331 Fed. Appx. 452 (9th Cir. 2009) (unpubl.). "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Principe v. Ukropina (In re Pacific Enters. Sec. Litig.),* 47 F.3d 373, 378 (9th Cir. Cal. 1995). Thus, "the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Heritage Bond*, 2005 U.S. Dist. LEXIS 13555 (internal citation omitted). Here, the parties actively litigated this case for over two years. Class Counsel has many years of experience in class actions

throughout the country, and in assessing the relevant merits of each side's case. *Smith Decl.* at ¶ 6. Based on that experience and our work in this case, Class Counsel recommends that the Court approve the Settlement.

### 6. Reaction Of The Class Members To The Proposed Settlement

The reaction of the class to the proffered settlement is perhaps the most significant factor to be weighed in considering its adequacy. Indeed, courts have explained that "the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Omnivision,* 559 F. Supp. 2d at 1043 (citation omitted).

Pursuant to this Court's March 15, 2010 Preliminary Approval Order, the deadline for Class Members to mail their requests to exclude themselves from the Settlement was June 30, 2010. In response to over 220,000 deliverable Notices sent to potential Class Members, approximately 153, or .07%, have chosen to opt out. Wnorowski ¶ 14.

The deadline for Class Members to mail their objections to the Settlement was June 25, 2010. Despite direct notice to more than 223,946 class members, not a single Class Member has objected. Smith Decl. ¶ 10. "The lack of objections to the settlement is perhaps the most significant factor weighing in favor of settlement." *West v. Circle K Stores, Inc.,* 2006 U.S. Dist. LEXIS 76558 (E.D. Cal. Oct. 19, 2006).

Although the claims deadline is not until August 9, 2010, the claims administrator has already received approximately 10,226 claims. Wnorowski ¶ 15. As the administrator notes in her affidavit, this rate is consistent with other, similar settlements.

The favorable reaction of the Class further supports approval of the Settlement.

### III. THE SETTLEMENT PROVIDED ADEQUATE NOTICE TO THE CLASS

As required by the Court's Preliminary Approval Order, Office Depot (through the Claims Administrator) notified potential Class Members of the Settlement by mailing a copy of the Notice to all persons for whom Office Depot had a record of purchasing a PPP during the relevant period. *See* Wnorowski. ¶ 10. In addition, a Summary Notice was published in the California editions of *Parade* and *USA Weekend* on April 18 and April 25, 2010. *Id.* ¶ 13. The Notice and the Summary

Notice also referenced the internet websites for Class Counsel where Class Members were able to view and download the Notice and claim forms. Smith Decl. ¶ 11. This method of giving notice, previously approved by the Court, is appropriate because it directs notice in a "reasonable manner to all class members who would be bound by the propos[ed judgment]." Fed. R. Civ. P. 23(e)(1).

The Notice (attached as Ex. A to the Wnorowski Affidavit.) advises Class Members of the essential terms of the Settlement, sets forth the procedure for objecting to the Settlement, and provides specifics on the date, time and place of the final approval hearing. The Notice also contains information regarding Lead Counsel's fee application and Named Plaintiff's request for an incentive award. Thus, the Notice provided the necessary information for Class Members to make an informed decision regarding the proposed Settlement. The Notice fairly apprises Class Members of their rights with respect to the Settlement and therefore is the best notice practicable under the circumstances and complies with the Court's Preliminary Approval Order, Federal Rule of Civil Procedure 23, and due process. *Rodriguez v. W. Publ'g Corp.,* 563 F.3d 948, 962 (9th Cir. 2009) ("Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard'").

## **CONCLUSION**

For all of the reasons stated herein, Named Plaintiff respectfully requests that the Court issue an Order that:

    1.    Approves the Settlement Agreement as fair, reasonable and adequate to the Settlement Class and directs its consummation according to its terms;

    2.    Finds that the form and manner of class notice described herein (i) constituted reasonable and the best practicable notice; (ii) constituted notice that is reasonably calculated, under the circumstances, to apprise potential class members of the pendency of the litigation, the terms of the proposed Settlement, the right to object to or exclude themselves from the proposed Settlement, and the right to appear at the Final Fairness Hearing; (iii) constitutes due, adequate, and sufficient notice to all persons entitled to receive notice; and (iv) meets the requirements of state and federal due process, the Federal Rules of Civil Procedure, and any other applicable state and/or federal laws;

3. Finds that all members of the Settlement Class (except those who have properly excluded themselves) shall be bound by this Settlement Agreement, including the release provisions and covenant not to sue;

4. Directs that judgment be entered in accordance with the terms of the Settlement Agreement (i) dismissing with prejudice all individual and class claims asserted in the Litigation that relate to PPPs purchased before October 12, 2007; (ii) dismissing without prejudice all individual and class claims asserted in the Litigation that relate to PPPs purchased on or after October 12, 2007; and (iii) ruling that no costs or fees be assessed on either party beyond the attorneys' fees and expenses to be paid by Office Depot to Class Counsel;

5. Forever bars any claims or liabilities related to the litigation or any Released Claims against the Released Parties as defined in the Settlement Agreement;

6. Provides for the Court to retain jurisdiction of all matters relating to the interpretation, administration, implementation, and enforcement of this Settlement Agreement; and

7. Directs that the judgment of dismissal with prejudice be entered immediately.

Dated: July 16, 2010          Respectfully submitted,


　　　　/s/Barbara Quinn Smith　　　　
Barbara Quinn Smith (Ohio Bar 0055328)
(admitted *pro hac vice)*
**MADDOX HARGETT & CARUSO**
9853 Johnnycake Ridge Road
Suite 302
Mentor, OH 44060
Telephone: 440-354-4010
Facsimile: 440-848-8175

Scott R, Kaufman, SBN 190129
**CALIFORNIA LEMON LAWYERS**
1400 Coleman Ave Suite C-14
Santa Clara, CA 95050
Telephone: (408) 727-8882
Facsimile: (408) 727-8883

**MEMORANDUM IN SUPPORT OF NAMED PLAINTIFF'S**　　　　　　　　　　　　　　　　　　　　　　**Case No. 07-CV-05938 RMW**
**MOTION FOR FINAL APPROVAL OF SETTLEMENT**
11

Thomas A. Hargett (Indiana Bar 11252-49)
(admitted *pro hac vice*)
Thomas K. Caldwell (Indiana Bar 16001-49
(admitted *pro hac vice*)
**MADDOX HARGETT & CARUSO**
10100 Lantern Road
Suite 150
Fishers, IN 46038
Telephone: 317-598-2040
Facsimile: 317-598-2050

Marnie Lambert (SBN 165019)
Matthew R. Wilson (Ohio Bar #0072925)
(admitted *Pro Hac Vice*)
**DAVID P. MEYER & ASSOCIATES, CO., LPA**
1320 Dublin Road, Suite 100
Columbus, Ohio 43215
Telephone: (614) 224-6000
Facsimile: (614) 224-6066

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on July 16, 2010.

Dated: July 16, 2010                    Respectfully submitted,

                                        /s/ Barbara Quinn Smith
                                        Barbara Quinn Smith